# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

SEP 2 5 2002

AMY WIGINTON, individually and on )
behalf of all persons similarly situated, )
                                   )
               Plaintiff, )
     v.                           )
                                     )
CB RICHARD ELLIS, )
                                     )
              Defendant. )

Case **02C 6832**

JUDGE ANDERSEN

JURY TRIAL DEMANDED

MAGISTRATE JUDGE ASHMAN

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and all other similarly situated employees of CB Richard Ellis ("CBRE" or the "Company"), by her attorneys, alleges as follows:

1.       This is a class action brought by plaintiff Amy Wiginton ("Ms. Wiginton") on behalf of herself and other similarly situated women (the "Class") against CBRE, to remedy discrimination and harassment on the basis of sex, in violation of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, attorneys fees and other appropriate legal and equitable relief. Plaintiff also asserts claims under the Illinois common law for intentional infliction of emotional distress, negligent supervision and negligent retention.

2.       Plaintiff is a female who was constructively terminated from her position as a CBRE employee. Plaintiff was subjected to a hostile, offensive and intimidating work environment at the offices maintained by CBRE in the Chicago area (collectively, "Chicago Office"), in addition to various other locations maintained by CBRE throughout the United States. The hostile work environment, which exists company-wide, altered the terms and conditions of the plaintiff's employment. Plaintiff and numerous other female CBRE employees have been subjected to

persistent unwelcome and offensive touching and groping; they have had their breasts, buttocks and genitals grabbed; they have been flashed by their male colleagues and supervisors in various states of undress; they have had vulgar comments and degrading references about themselves and women generally directed at them on a daily basis; they have been subjected to discussions among male colleagues and superiors about women's sexual performances, their own sexual performances, and the size, shape and relative merits of women's body parts; and they have been allowed – or not allowed – to interface with customers based on an individual woman's sex quotient.

3.     CBRE management, including but not limited to supervisors and members of the General Counsel's office, at CBRE offices nationwide, is responsible for not only condoning – but also perpetuating – a hostile work environment at CBRE. On numerous occasions, members of Company management have harassed Ms. Wiginton and members of the Class and permitted male employees to harass plaintiff and members of the Class without reprimand. CBRE management has observed sexually explicit behavior in its offices and at company events and has consistently failed to report it or stop it, allowing the offensive and oppressive environment in which the plaintiff and members of the Class have worked or continue to work to persist. CBRE has been and continues to be aware of the existence of the hostile work environment, and the other discriminatory acts committed against female employees on a regular basis.

4.     Plaintiff and members of the Class have both requested that the harassing conduct stop and complained to CBRE's Human Resources Department but management has either been unresponsive, waited an unreasonable amount of time before responding or forced plaintiff and members of the Class to confront their harassers directly, causing intimidation and retaliation, without any repercussions to the harassers.

5.      Furthermore, while CBRE does maintain a written sexual harassment policy or written procedure for employee complaints of sexual harassment, it involves reporting to the very same management personnel who have expressly engaged in behavior to sexually harass and denigrate plaintiff and members of the Class, thus rendering the policy completely ineffective and meaningless.

## JURISDICTION AND VENUE

6.      Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of Civil Rights; and (ii) under 42 U.S.C. § 2000e, *et seq*. This Court also has supplemental jurisdiction of plaintiffs' claims arising under state law.

7.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the unlawful employment practices are alleged to have been committed in the Northern District of Illinois and the defendant, CBRE, can be found in the Northern District of Illinois.

8.      At all relevant times, defendant constitutes an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e-(b).

## PROCEDURAL REQUIREMENTS

9.      Ms. Wiginton filed timely charges of sex discrimination with the EEOC, on her own behalf and on behalf of similarly situated individuals. In September 2002, the EEOC issued a Notice of Right to Sue to Ms. Wiginton. Plaintiff has complied with all statutory prerequisites to the filing of this action.

**PARTIES**

10.     Plaintiff Amy Wiginton is a resident of Brookfield, Illinois and was employed as a Marketing Director at CBRE's Oak Brook, Illinois office, at which she worked from December 7, 1997 until the time she was constructively discharged from CBRE as a result of the hostile work environment on December 31, 2001.

11.     Defendant CBRE is a worldwide commercial real estate services company organized under the laws of the State of Delaware and engaged in property sales, leasing, and management; corporate services; facilities and project management; mortgage banking; investment management; capital markets; appraisal and valuation; research and consulting. CBRE has approximately 10,000 employees in more than 250 offices, maintaining its corporate headquarters in Los Angeles, California. CBRE also maintains five offices in the Chicago metropolitan area. In 2001, CBRE reported $1.17 billion in net revenues.

**ALLEGATIONS OF INDIVIDUAL AND CLASS-WIDE DISCRIMINATION**

12.     Plaintiff and the Class have been and continue to be victims of a pattern and practice of sexual harassment, other forms of sex discrimination and other forms of abuse while employed at CBRE.

13.     Specifically, plaintiff and the Class have been subjected to severe and pervasive sexual harassment, as follows:

(a)     There is and was a sexually hostile, intimidating and offensive work environment at CBRE directed at plaintiff and the Class;

(b)     The work environment at CBRE has been, and remains, sufficiently severe so as to alter the terms and conditions of plaintiff's and the Class members'

-4-

employment, and unreasonably interfere with their work performance;

(c)     A reasonable person would experience the work environment at the CBRE as hostile, and plaintiff and the Class perceived and continue to perceive their work environment as hostile and abusive;

(d)     The abusive and hostile work environment has been and continues to be pervasive throughout CBRE; and

(e)     Plaintiff and the Class have suffered severe emotional distress as well as other physical and economic injury as a result of the sexual harassment.

14.     Plaintiff and the Class have also been subjected to sexual harassment as a result of supervisors conditioning the awarding of favorable job assignments and other job related benefits on submission to their sexual demands. The rejection of such demands has resulted in an alteration in the terms and conditions of plaintiff's and the Class' employment, and has unreasonably interfered with their work performance.

15.     Plaintiff has repeatedly complained to management about the hostile work environment in which she was forced to work. Plaintiff's complaints have been ignored. Further, CBRE failed to exercise reasonable care in preventing sexual harassment or to correct any of the sexually harassing behavior.

16.     In addition, plaintiff and the Class have been subjected to a pattern and practice of discrimination on the basis of sex as a result of a company-wide anti-female attitude and this pattern and practice has had a significant effect on the terms, conditions and privileges of their employment.

17.     Plaintiff and the Class have also been subjected to the intentional infliction of emotional distress, and have been damaged as a result of CBRE's negligent supervision and retention

of numerous CBRE employees.

18.    Among the evidence of the abusive and harassing work environment at the company are the sexually-explicit and pornographic material disseminated at CBRE, including birthday cards portraying naked women and the inclusion of pornographic materials, such as a book entitled "101 Nights of Great Sex," as "White Elephant" gifts at the annual CBRE office holiday parties.

19.    In addition, plaintiff and similarly situated women have been subjected to a daily barrage of lewd remarks, propositions and sexist insults, as well as leering glances and "elevator eyes" directed their way from co-workers and supervisors. A small sampling of the types of unwanted and offensive comments made to plaintiff and the Class on a daily basis include:

(a)    "She's got a real nice rack;" "I love your breasts;" "Her breasts are huge;" "How big are your breasts now?" (during a telephone conversation); and "You have beautiful breasts;"

(b)    Male employees openly ask women about their orgasms, their sexual history, and their sexual interests;

(c)    Male employees openly "rate" the figures of women with whom they do business, commenting on their size, their shape, their breasts, their "asses" and their sexuality;

(d)    Jeff Barrett, the managing director of CBRE's Oak Brook, Illinois office, among others, routinely gives birthday cards to male brokers, to be opened in front of the female employees, that display nude or bikini-clad women with prominently displayed breasts, at which time the male employees engage in lewd talk;

(e)     Scott Stubblefield ("Stubblefield"), a broker who worked from CBRE's Columbus, Ohio office and, on information and belief, now manages the St. Louis, Missouri office, has been overheard asking his male colleagues, "Does your assistant give good head?";

(f)     Specific examples of these types of comments include: males routinely asked their pregnant female co-workers whether they intended to breast feed and routinely commented on the size and shape of their changing figures; Gary Fazio, a broker in Oak Brook, openly asked a pregnant female employee in front of numerous males, "So, how far are you dilated?"; Pete Adamo, another CBRE broker who works in the Oak Brook office asked a female employee "Do you shave your crotch?"; David Justh, a broker in Oak Brook, openly commented on an assistant's breasts and told his assistant (in front of others) that she should be working in a factory after berating her in front of others and causing her to cry;

Each of these comments and topics of conversation were not isolated incidents but are examples of the types of lewd and sexually charged comments by male employees and members of management that are an everyday occurrence at CBRE.

20.     Plaintiff and members of the Class have also been subject to unwanted touching, kissing, groping, staring and other forms of harassing attention by co-workers or supervisors. For example:

(a)     Jim Hochman, in-house counsel at CBRE, pulled his pants down and flashed company personnel in South Beach, Florida while on a CBRE Corporate Services trip. On a different trip to Key West, Florida, Hochman and Steve Kozarits,

-7-

among other management personnel, took company employees to a bar where women's naked bodies are painted. Both Hochman and Kozarits later returned to their CBRE offices and recounted, separately, the naked women they saw to female CBRE employees. On still other occasions, Hochman openly told jokes that were derogatory to women, including jokes referring to "blonde pussy;"

(b)    Hochman's "flashing" incident is not isolated. At firm parties, male colleagues routinely remove their clothes, engage in stripteases and rub themselves against their female colleagues; and

(c)    For office camping and other overnight trips, male management personnel explicitly direct that the male spouses of female employees are not to be invited and advise female employees that "they're not married" while on the road because "they are separated from their spouses" and are "allowed" to engage in inappropriate sexual behavior with their male colleagues. Women are also encouraged to take off their underwear during canoeing and swimming activities. During these trips, male employees, including management, openly touch women's breasts, groins and bodies, rub their groins against women's bodies, and explicitly proposition women for sex.

21.    In addition to being present for degrading comments and sexual jokes regarding women generally, Ms. Wiginton, like the members of the Class, was subjected on a daily basis to harassment that included: i) verbal comments regarding her breasts, her body, her sexual history, her husband's sexual interests, her orgasms; ii) verbal propositions for sex; and iii) unwanted touching, including being rubbed by men's penises and having her breasts groped and grabbed.

-8-

Examples include:

     (a)    At a Special Properties Group ("SPG") outing at a bar in St. Simons Island, Georgia, Steve Kozarits ("Kozarits"), Ms. Wiginton's supervisor, encouraged her to dance with Stubblefield, stating "Go dance with Stubby. You'll make his night." Ms. Wiginton repeatedly stated that she was not interested. When Ms. Wiginton finally did at Kozarits' behest, Stubblefield rubbed his body, including his erect penis, against Ms. Wiginton, over her protests and struggles to get away;

     (b)    George Relias, Ms. Wiginton's former supervisor, grabbed her breasts (about which Ms. Wiginton complained to management and Human Resources). After this incident, Relias continually stared at Ms. Wiginton's breasts and denied her the opportunity to move her cubicle away from his office to an open cubicle on the other side of the office when she requested.

     (c)    Kozarits, Ms. Wiginton's supervisor at the time she was constructively discharged, propositioned Ms. Wiginton constantly; required Ms. Wiginton to have close physical contact with him while sitting in meetings and while traveling; commented on a daily basis about her breasts, her legs, and her clothes; questioned her regarding her sexual life, including asking every Monday "So, did you have sex this weekend?"; and called her "Wiggles" in front of colleagues and clients referencing her breasts. Ms. Wiginton constantly requested that Kozarits stop his harassing behavior. Kozarits' response to Ms. Wiginton's request that he stop harassing her was always, "No, you love it" or "You know I love you."

     (d)    Chuck Finney, a broker in CBRE's Dallas, Texas office, openly

commented on Ms. Wiginton's figure during a CBRE World Conference at Mandalay Bay, stating, "My, don't you just have the prettiest little figure," while looking her body up and down;

(e)     Having heard that Ms. Wiginton had suffered a miscarriage, David Hinchman, a CBRE broker from the Kansas City office, asked Ms. Wiginton, "So, how's the baby-making going?" at a firm dinner in front of male colleagues. When Ms. Wiginton failed to provide details, Hinchman proceeded to tell Ms. Wiginton that he practiced Tantra Sex, which he explained as creating longer-lasting orgasms and a heightened state of awareness during orgasms. Hinchman further explicitly described the orgasms he had experienced and directly asked Ms. Wiginton whether she had orgasms;

(f)     At a later date, after Ms. Wiginton had a baby, her supervisor, Kozarits, asked, "Does [your husband] like the size of your breasts?" and "Does [your husband] love your breasts?"and further stated "Tell [your husband] he should get all he can of them now." Kozarits commented on and inquired whether Ms. Wiginton would be having sex with her husband after the six-week check-in after giving birth. Kozarits further told Ms. Wiginton he loved her "voluptuous figure," in response to which Ms. Wiginton called Kozarits a pig.

(g)     While Ms. Wiginton was on maternity leave, her male supervisor, Kozarits, circulated an e-mail to the 45 men for whom Ms. Wiginton worked implying that the father of the child was a male colleague as the result of an illicit sexual affair;

-10-

(h)     After returning from the company trip in Key West, Florida, where employees went to the bar where naked women's bodies are painted, Hochman and Kozarits separately recounted, in detail, their experiences to Ms. Wiginton. Further, Kozarits stated, "If you were wearing a wet t-shirt, you would have fit in perfect," referring to Ms. Wiginton's breasts; and

(i)     When Hochman ran into Ms. Wiginton in a parking lot while accompanied by two male management personnel, Hochman called out to Ms. Wiginton, "Hey Aimless." Ms. Wiginton sent Hochman an e-mail complaining about the derogatory nature of the nickname and later discussed the issues with Hochman in person. Hochman responded: "That's a pet name. That's what I call all my ex-girlfriends." (Of course, Ms. Wiginton never was his girlfriend).

22.     Plaintiff was told that her life could be made easier if she submitted and played along with the sexual advances of her colleagues.

23.     At all times relevant to this action, the existence and severity of the sexually harassing environment was fully known by CBRE management.

24.     As set forth herein, there is a pervasive and severe pattern and practice of sexual discrimination at CBRE, including a hostile work environment, individual instances of harassment, denial of job benefits to women because of their sex, retaliation and other forms of abuse. Each paragraph above describes a pattern and practice of sex discrimination created and sustained by the defendant CBRE that constitutes a hostile work environment.

## CLASS ALLEGATIONS

25.     Plaintiff sues on her own behalf and on behalf of a class of persons under Rule 23(a)

and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure defined as follows:.

> All women employed by CB Richard Ellis at any time between
> January 1, 1997 and the present (the "Class Period").

26.     CBRE has employed more than 1,000 women nationwide during the Class Period.

Therefore, the Class is so numerous that joinder of all members is impracticable.

27.     All members of the Class have been damaged by the same common course of conduct

alleged herein, and this common course of conduct has affected the Class as a whole.  This common

course of conduct presents questions of law and fact which are common to the Class, and

predominate over any questions affecting only individual members of the Class.  These questions

include, but are not limited to the following:

(a)     whether CBRE engages in a pattern and practice of discrimination

against female employees by allowing and promoting a hostile, intimidating and

offensive work environment directed toward its female employees at its offices;

(b)     whether CBRE otherwise engages in a common course of conduct that

discriminates against plaintiff and other members of the plaintiff Class on the basis

of sex with respect to the terms and conditions of their employment;

(c)     whether members of CBRE management condone and participate in

the sexual harassment and sexual discrimination of its female employees;

(d)     whether CBRE has exercised reasonable care to prevent and correct

promptly any sexually harassing behavior;

(e)     whether CBRE has retaliated against any or all of the Class members

for complaining about the sexual harassment and/or discrimination;

(f)     whether the members of the Class have sustained damages, and, if so,

the proper measure of damages; and

(g)     whether CBRE's discriminatory policies and practices should be

eliminated, and, if so, the proper procedure for doing so.

28.     The claims of the individual named plaintiff are typical of the claims of the Class and

do not conflict with the interests of any other members of the Class in that all have suffered from the

same wrongful common course of conduct of the Company and its agents.

29.     The individual named plaintiff will fairly and adequately represent the interests of the

Class.  Plaintiff's attorneys are qualified to pursue this litigation and have extensive experience in

class actions, including employment discrimination actions.

30.     A class action is superior to other methods for the fast and efficient adjudication of

this controversy.   A class action regarding the issues in this case creates no problems of

manageability.

## COUNT I
### (DISCRIMINATION IN VIOLATION OF TITLE VII)

31.     Plaintiff repeats and realleges every allegations above as if fully set forth herein.

32.     Defendant has discriminated against plaintiff and the Class by subjecting them to a

hostile, offensive and intimidating work environment based on sex.

33.     In addition, defendant has discriminated against plaintiff and the Class by permitting

job related benefits to be granted to those women who submitted to its agents' requests for sexual

favors, and by refusing job benefits to and otherwise retaliating against women who refused its agents' requests for sexual favors.

34.     Defendant has also discriminated against women on the basis of sex by treating them differently than their male co-workers in the terms, conditions and privileges of their employment.

35.     Defendant failed to exercise reasonable care to prevent and correct promptly the sexually harassing behavior.

36.     Defendant was aware of the above conduct at all relevant times.

37.     Plaintiff and members of the Class have suffered damages as a result of defendant's common course of conduct alleged above.

## COUNT II
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

38.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

39.     Defendant, through its managers and employees, intentionally engaged in extreme and outrageous conduct and CBRE, through its managers and employees, perpetrated such conduct in the course of plaintiff and the Class' employment.

40.     Defendant, through its managers and employees, acted with the intent to inflict severe emotional distress on plaintiff and the Class, or with the knowledge that there was at least a high probability that their conduct would inflict severe emotional distress on plaintiff and the Class.

41.     The conduct, described above, engaged in by defendant, through its managers and employees, was so severe that no reasonable person could be expected to endure it.

42.     The extreme and outrageous conduct of defendant, its managers and employees, has proximately caused plaintiff and the Class to suffer from severe and ongoing emotional distress.

## COUNT III
### (NEGLIGENT SUPERVISION)

43.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

44.     Defendant had and has a duty to supervise all managers and employees employed at CBRE.

45.     Defendant negligently supervised managers and employees employed at CBRE, as set forth above, by permitting them to severely abuse, assault and batter plaintiff and members of the Class because of their sex.

46.     Defendant's negligent supervision proximately caused plaintiff and the Class to suffer injuries including, but not limited to, mental anguish and other forms of personal injury.

## COUNT IV
### (NEGLIGENT RETENTION)

47.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

48.     Defendant knew, or should have known, that the employees, managers and supervisors referred to above, as well as others not identified herein, had harmed female employees in the past by their conduct, and this harmful conduct presented a danger that they would continue to harm female employees.

49.     Defendant retained the employees, managers and supervisors, whom it was aware presented a danger of inflicting harm on female employees, even after defendant was informed of the danger.

50.     Defendant's retention of these unfit employees, manager and supervisors proximately caused harm to plaintiff and the Class, including, but not limited to, mental anguish and other forms of personal injury.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff and the Class respectfully request that this Court grant the following relief:

A.      Certify this case as a class action, the named plaintiff herein as an adequate Class representative and plaintiff's counsel as counsel for the Class;

B.      Enter a judgment that the acts and practices of defendant complained of herein are in violation of the laws of the United States and the State of Illinois;

C.      Grant a permanent injunction enjoining CBRE, its agents and employees from (i) continuing to discriminate against plaintiff and Class members because of their sex; (ii) engaging in the sexual harassment of female employees; (iii) creating, facilitating or permitting the existence of a work environment that is hostile to female employees; (iv) retaliating against employees who complain, in whatever manner, about sex discrimination, including sexual harassment; and (v) otherwise depriving plaintiff and the Class of their rights and privileges secured by federal law;

D.      Order CBRE to ensure that appropriate remedial action is taken to avoid the occurrence of further incidents of sexual harassment or sex discrimination against its female employees;

E.      Order CBRE to adopt and enforce a policy for the prevention of sexual harassment and any other forms of discrimination based on sex, which shall include (i) the presence of independent personnel to whom complaints of sexual harassment, or other forms of sex discrimination may be directed; (ii) provisions for the confidentiality of any such complaints; and (iii) provisions requiring the complete and impartial investigation of any such complaint filed;

F.      Order CBRE to impose substantial discipline, such as suspension without pay,

demotion or termination, upon any supervisor or manager who engages in sexual harassment or sex discrimination or permits any such conduct to occur in his or her work area or among employees under his or her supervision, or who retaliates against any person who complains or participates in any investigation or proceeding arising out of any such conduct;

G.    Order CBRE to revise its supervisory appraisal process and include performance evaluations for the handling of equal employment opportunity issues as an element in supervisor appraisals and to link such evaluations directly to supervisor salary/bonus structure;

H.    Order CBRE to provide annual sexual harassment training to all employees, managers, supervisors and other management personnel, and to provide such training to all persons charged with the handling of complaints of sexual harassment and other forms of sex discrimination;

I.    Award plaintiff and the Class all back pay, front pay, benefits, and any other remuneration to which they would have been entitled but for defendant's discrimination;

J.    Award plaintiff and the Class compensatory and punitive damages;

K.    Award plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

L.    Grant plaintiff and the Class such other and further relief as this Court finds necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages so triable in this action.

DATED: September 25, 2002

AMY WIGINTON, individually and on behalf of the Class, plaintiff

By: _Efartweg_____
One of Her Attorneys

Kenneth A. Wexler
Elizabeth Fegan Hartweg
KENNETH A. WEXLER AND ASSOCIATES
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Tel: (312) 346-2222
Fax: (312) 346-0022

JoDee Favre
FAVRE & ALLEN
121 East Main Street
Belleville, IL 62220
Tel: (618) 236-7736
Fax: (618) 236-7746

Civil Cover Sheet                                                      Page 1 of 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

## Civil Cover Sheet  02C 6832

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

JUDGE ANDERSEN

MAGISTRATE JUDGE ASHMAN

**Plaintiff(s): AMY WIGINTON, individually and on behalf of all persons similarly situated**

**Defendant(s):CB Richard Ellis**

County of Residence: Cook County, Illinois

County of Residence: Los Angeles County, California

Plaintiff's Atty:

Kenneth A. Wexler
KENNETH A. WEXLER AND
ASSOCIATES
One North LaSalle Street, Suite 2000
(312) 346-2222

Defendant's Atty:

DOCKETED

SEP 2 5 2002

II. Basis of Jurisdiction:                 **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties
(Diversity Cases Only)

Plaintiff:- **N/A**
Defendant:- **N/A**

IV. Origin :                               **1. Original Proceeding**

V. Nature of Suit:                         **442 Employment**

VI.Cause of Action:                        **42 U.S.C. Section 2000e**

VII. Requested in Complaint
                      Class Action: **Yes**
                      Dollar Demand:
                      Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date: 9/25/02

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**     Revised: 06/28/00

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED** SEP 2 5 2002

Eastern Division

In the Matter of

Amy Wiginton, individually and on behalf of all persons similarly situated,

v.

CB Richard Ellis

SEP 2 5 2002



Case Number:

JUDGE ANDERSEN

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff, Amy Wiginton

MAGISTRATE JUDGE ASHMAN

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Kenneth A. Wexler | NAME Elizabeth Fegan Hartweg |
| FIRM Kenneth A. Wexler and Associates | FIRM Kenneth A. Wexler and Associates |
| STREET ADDRESS One North LaSalle Street, Suite 2000 | STREET ADDRESS One North LaSalle Street, Suite 2000 |
| CITY/STATE/ZIP Chicago, IL 60602 | CITY/STATE/ZIP Chicago, IL 60602 |
| TELEPHONE NUMBER (312) 346-2222 | TELEPHONE NUMBER (312) 346-2222 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 03127810 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06229226 |
| MEMBER OF TRIAL BAR? YES [✔] NO [ ] | MEMBER OF TRIAL BAR? YES [ ] NO [✔] |
| TRIAL ATTORNEY? YES [✔] NO [ ] | TRIAL ATTORNEY? YES [✔] NO [ ] |
| | DESIGNATED AS LOCAL COUNSEL? YES [✔] NO [ ] |
| **(C)** | **(D)** |
| SIGNATURE JoDee Favre | SIGNATURE |
| NAME JoDee Favre | NAME |
| FIRM Favre & Allen | FIRM |
| STREET ADDRESS 121 East Main Street | STREET ADDRESS |
| CITY/STATE/ZIP Belleville, IL 62220 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (618) 236-7726 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES [ ] NO [✔] | MEMBER OF TRIAL BAR? YES [ ] NO [ ] |
| TRIAL ATTORNEY? YES [✔] NO [ ] | TRIAL ATTORNEY? YES [ ] NO [ ] |
| DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [✔] | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] |