Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 6832 | **DATE** | 5/5/2003 |
| **CASE TITLE** | colspan="3" | Amy Wiginton vs. CB Richard Ellis |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter MEMORANDUM, OPINION AND ORDER: The motion to dismiss is denied in part and granted in part [9-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 0 6 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 0 6 2003

| | |
|---|---|
| AMY WIGINTON, individually and on behalf of all persons similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| CB RICHARD ELLIS, | ) ) ) |
| Defendant. | ) |

Case No. 02 C 6832

Wayne R. Andersen
District Judge

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of the defendant CB Richard Ellis, Inc. to dismiss the class claim in Count I as well as Counts II through IV of plaintiff Amy Wiginton's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is denied in part and granted in part.

### BACKGROUND

Plaintiff Amy Wiginton is a resident of Brookfield, Illinois who was employed as a Marketing Director at CB Richard Ellis' (hereinafter referred to as "Richard Ellis") Oak Brook, Illinois office. She began working at Richard Ellis on December 7, 1997 and she continued to work there until she quit her job on December 31, 2001. Defendant Richard Ellis is a worldwide commercial real estate services company. (Complt. at ¶ 11.)

On September 25, 2002, Wiginton filed the instant lawsuit individually and on behalf of other women similarly situated alleging sex discrimination and harassment in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, *et seq.* According to the allegations in

the complaint, which we are required to accept as true for purposes of this motion, Wiginton was forced to endure nearly daily sexual harassment once she began working at Richard Ellis. While we will not go into detail, Wiginton has alleged that she was subjected to harassment that included: 1) verbal comments regarding her body and her sexual history; 2) verbal propositions for sex; and 3) unwanted touching. (Complt. at ¶ 21.) Specifically, Wiginton has alleged that one of her former supervisors both grabbed and continuously stared at her breasts. Further, her supervisor at the time she quit subjected her to perhaps the most intense harassment. He allegedly propositioned her regularly for sex, he commented daily on her body and her clothes, he questioned her regarding her sexual life, and he called her "Wiggles" in front of her colleagues, an apparent reference to her breasts. (Complt. at ¶ 21(c).) Perhaps most reprehensible of all, Kozaritis allegedly circulated an email while Wiginton was on maternity leave implying that the father of her child was actually a male colleague. (Complt. at 21(g).)

Additionally, as part of her complaint, Wiginton has filed a number of class allegations which state that women employees of Richard Ellis as a group were subjected to a pattern and practice of discrimination on the basis of sex as a result "of a company-wide anti-female attitude." (Complt. at ¶ 16.) In particular, the complaint alleges that sexually explicit and pornographic material was disseminated by male supervisors, including birthday cards portraying naked women and the inclusion of pornographic material as gifts at annual holiday parties. (Complt. at ¶ 18.) Additionally, plaintiff and similarly situated women at Richard Ellis were allegedly subjected to a "daily barrage of lewd remarks, propositions and sexist insults, as well as leering glances and 'elevator eyes' directed their way from co-workers and supervisors." (Complt. at ¶ 19.)

On December 31, 2001, Wiginton decided to voluntarily terminate her employment with Richard Ellis. The complaint suggests that the constant barrage of sexual harassment prompted her to make this decision. On January 2, 2002, the plaintiff filed timely charges with the United States Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and sexual harassment. In September 2002, the EEOC issued Wiginton a Notice of Right To Sue letter. She filed this lawsuit shortly thereafter.

## DISCUSSION

In ruling on a motion to dismiss, the Court must normally accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

In its motion to dismiss, the defendant has raised two primary issues. First, the defendant is seeking to strike the class component of Wiginton's Title VII claim. Richard Ellis argues that the class action allegations contained in the complaint are outside the scope of the plaintiff's EEOC charge. Second, the defendant requests that Counts II through IV of the complaint be dismissed because they are preempted by the Illinois Human Rights Act. We will address each of these arguments in turn.

I.  **Title VII Class Action Complaint**

In this portion of its motion to dismiss, Richard Ellis contends that the class action allegations of Wiginton's complaint should be stricken because: 1) her EEOC charge does not contemplate the subsequent filing of a federal class action sexual harassment/discrimination lawsuit; and 2) the time period for the purported class is broader than the period alleged in the EEOC charge. Both parties agree that the defining precedent for this case is the Seventh Circuit's ruling in *Schnellbaecher v. Basking Clothing Co.*, 887 F.2d 124 (7th Cir. 1989).

It is well settled that a federal complaint alleging employment discrimination pursuant to Title VII must rely upon a timely charge of discrimination filed with the EEOC. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011 (1974); *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). It is also well settled that the allegations contained in the complaint must be sufficiently "like" or "related to" the allegations of the underlying EEOC charge so that: 1) the defendant was placed on notice of the claims it would be required to defend against; and 2) the EEOC had an opportunity to investigate the allegations that might eventually find their way into a lawsuit and attempt to conciliate the differences between the parties. *See Schnellbaecher*, 887 F.2d at 127; *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) ("allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.").

The requirement that the complaint allegations be "like or reasonably related to" the allegations contained in the EEOC charge extends to the scope of the complaint, so that a class

4

action claim in the lawsuit could have been properly anticipated in the underlying charge. Under the *Schnellbaecher* regime, our focus is the content of the charge itself and not on the subsequent EEOC investigation, if any. Whether the EEOC in fact investigated certain allegations contained in the charge is likely to have some effect on whether the defendant received adequate notice and had a chance to conciliate. But even "a limited EEOC investigation will not necessarily defeat a complaint where the complaint contains allegations like or reasonably related to the EEOC charge, but which the EEOC failed to investigate. In such a case, 'the proper inquiry would be into what EEOC investigation could reasonably be expected to grow from the original complaint.'" *Schnellbaecher*, 887 F.2d at 127 (quoting *Babrocky*, 773 F.2d at 864, n.2).

In its motion, Richard Ellis has argued that Wiginton's EEOC charge was insufficient to either put it on notice of the purported class claims it would have to defend against or to allow the EEOC an opportunity to investigate and/or conciliate the dispute prior to the filing of the lawsuit. We disagree. While it is true that the plaintiff's EEOC charge did not use the magic term "class action," the caselaw is clear that a EEOC charge need not contain the words "class action" in order to support a subsequent class lawsuit. *See Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1017 (7th Cir. 1988); *Ruiz v. Adecco Employment Svcs.*, 2002 WL 31427454, at *2 (S.D. Ind. Oct. 25, 2002).

In her five paragraph EEOC charge, Wiginton devoted one entire paragraph to her contentions that male employees and supervisors at Richard Ellis sexually discriminated against and harassed her female colleagues. Paragraph 3 of the charge states as follows:

> Management personnel and other male employees have also sexually harassed, and continue to sexually harass, <u>other female employees</u> by making sexual advances to them at work, commenting on the sexual attributes <u>of women's</u> body

parts, distributing pornographic material under the guise of birthday cards and in holiday grab bags, and engaging in various pornographic and lewd behaviors at employer-sanctioned parties, conferences and trips. I am and have been offended, embarrassed, upset and distressed by this intolerable sexual harassment.

(EEOC Charge at ¶ 3) (emphasis added). This paragraph unmistakably asserts that women other than the plaintiff were subjected to the same type of lewd behavior that prompted Wiginton to file this action in the first place. Therefore, we have no doubt that the class action allegations contained in the federal complaint are "like or reasonably related to" the allegations contained in paragraph 3 of Wiginton's EEOC charge. Thus, the motion to dismiss the substance of the class action allegations is denied.

The second prong of Richard Ellis' attack on the class action complaint is the argument that the class lawsuit falls outside the temporal scope of the EEOC charge. This is a better argument. On the generic EEOC charge of discrimination form, there is a space in which the complainant can indicate both the earliest and latest dates of discrimination. In this section of her EEOC charge, Wiginton alleged that the discrimination and harassment began in January 1999 and continued until the time she filed her charge in January 2002. Based on our reading of the charge and the complaint, this served to put Richard Ellis on notice that it would have to defend against individual and class action allegations of sexual harassment and discrimination for the time period between January 1999 and January 2002. However, in her complaint, Wiginton has asserted that the period for her class action allegations began in January 1997. This is improper because nowhere in her EEOC charge did Wiginton mention the year 1997. Thus, there is no way that Richard Ellis was put on notice that it would have to defend a class action

suit that potentially could include women allegedly discriminated against before Wiginton even started working there.

In summary, the defendant's motion to dismiss or strike the class action allegations in Count I because the class claims were not included in the EEOC charge is denied. The EEOC charge amply placed Richard Ellis on notice that it potentially would have to contend with a class of women who allegedly were sexually harassed by male supervisors and colleagues. However, as this case goes forward, any putative class definition must be restricted to the allegedly discriminatory treatment that female CB Richard Ellis employees were subjected to between January 1, 1999 and the present. This ruling will remain in effect for all subsequent briefing on a motion for class certification.

## II. State Law Counts

In addition to her Title VII allegations, Wiginton's complaint also includes a variety of state law tort counts. Count II alleges intentional infliction of emotional distress. Count III alleges negligent supervision. Count IV alleges negligent retention. In her response to the motion to dismiss, Wiginton acknowledged that she cannot state a claim for negligent supervision or negligent retention and she asked that these Counts be dismissed. That request is granted. Counts III and IV are hereby dismissed. Richard Ellis argues that Count II should also be dismissed because it is preempted by the Illinois Human Rights Act. We agree.

The Illinois Human Rights Act ("IHRA") prohibits employment discrimination based on a person's disability. 775 ILCS 5/1-101 *et seq*. The IHRA preempts all state law claims "seeking redress for a 'civil rights violation' within the meaning of [that] statute." *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 639 N.E.2d 1273, 1276 (1994). However, when a

7

course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA. In other words, "if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish[] the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim." *Krocka v. City of Chicago*, 203 F.3d 507, 516-517 (7th Cir. 2000) (quoting *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 687 N.E.2d 21, 23 (1997)). The policy behind this preemption doctrine is well-founded. If state law torts based on the same allegations which underlie the employment discrimination action were permitted to exist independently, then the notice and conciliation goals of the federal and state statutes would be severely undermined. That is why federal courts have routinely determined that, in employment discrimination suits, state law torts should be subsumed by Title VII and the IHRA.

In this case, Wiginton begins her claim for intentional infliction of emotional distress by repeating and realleging all of the allegations which formed the basis for her well-pled Title VII count. (Complt. at ¶ 38.) She then continues in the next paragraph by stating that Richard Ellis, "through its managers and employees, intentionally engaged in extreme and outrageous conduct and [Richard Ellis], through its managers and employees, perpetrated such conduct in the course of plaintiff and the Class' employment." (Complt. at ¶ 39.) In other words, the exact same allegations which formed the basis for her Title VII count also support her intentional infliction of emotion distress count. In the words of the Seventh Circuit, the intentional infliction of emotional distress claim is "inextricably linked" to her Title VII claim. *Krocka*, 203 F.3d at 517. It cannot exist but for the sexual harassment/discrimination allegations. Thus, Count II of Wiginton's claim is dismissed because it is preempted by the Human Rights Act.

8

Even though her intentional infliction of emotional distress claim has been dismissed, Wiginton should not be discouraged or disheartened. Any and all relief Wiginton sought as part of her intentional infliction of emotional distress claim, if proven, is fully recoverable as punitive damages in connection with her Title VII claim.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied in part and granted in part. The motion to strike the substantive class allegations is denied. However, the purported class cannot include women who were allegedly discriminated against prior to January 1, 1999. Furthermore, the motion to dismiss Count II is granted because it is preempted by the Illinois Human Rights Act. Counts III and IV are also dismissed.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: May 5, 2003