# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6832 | **DATE** | 9/15/2003 |
| **CASE TITLE** | Amy Wiginton vs. CB Richard Ellis | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiffs' motion to restrict communications [23-1] is denied. Plaintiffs' motion for approval of a scientific survey [36-1] is denied in part and granted in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 5 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 16 2003 date docketed | 55 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 9/15/2003 date mailed notice | |
| IS | courtroom deputy's initials | 03 SEP 16 PM 4:33 | IS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMY WIGINTON, individually and on behalf of all persons similarly situated, ) ) ) | Case No. 02 C 6832 |
| Plaintiff, ) ) | Judge Wayne R. Andersen |
| v. ) ) | Magistrate Judge Martin C. Ashman |
| CB RICHARD ELLIS, ) ) | |
| Defendant. ) | |

SEP 16 2003

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Plaintiffs to Restrict Communications with Putative Class Members and Motion for Approval of Scientific Survey of Putative Class for Purpose of Class Certification. For the reasons set forth below, the Court finds that Plaintiffs' motion to restrict communications should be denied and Plaintiffs' motion for approval of a scientific survey should be denied in part and granted in part.

### I. Background

Plaintiff Amy Wiginton filed this lawsuit in September of 2002, alleging a nationwide pattern and practice of sexual harassment at the offices of Defendant CB Richard Ellis, Inc. ("CBRE"). Plaintiff was given leave to amend the class action complaint in June of this year to add Kristine Moran as a plaintiff.

Plaintiffs bring these motions, arguing that CBRE's contact with its employees has threatened and intimidated its employees into silence. To support this theory, they point to

several communications by Defendant. On October 1, 2002, Defendant's Chief Operating Officer sent an e-mail to all CBRE personnel reacting to publicity about the case, and stating in part:

> CB Richard Ellis has a zero tolerance policy against harassment of any type and takes charges of such misconduct very seriously. . . . Although this matter has received some press coverage in the Chicago area, [CBRE] does not comment on pending litigation. . . . If any other third person, such as a friend, acquaintance or client asks about the lawsuit, you should inform them that [CBRE] has a zero tolerance policy against harassment in the workplace but that you do not have any knowledge of the facts relating to the lawsuit . . . .

Not coincidentally, this e-mail was sent five days after Plaintiffs' attorneys issued a press release relating to the complaint that had been filed, and which had receive some media attention.

On May 15, 2003, the COO sent out another e-mail to CBRE employees. This e-mail followed press coverage of a decision by Judge Andersen to deny CBRE's motion to strike the class allegations from the original complaint. This e-mail stated that "CB Richard Ellis prides itself on having a strong policy against harassment of any type and is committed to providing all employees an environment free from harassment or discrimination." The e-mail continued, "Our policy also affords every employee the absolute right to complain about an such conduct without fear of retaliation." Plaintiffs also complain that the managing director of the St. Louis office forbade employees from talking to attorneys or Wiginton and that women who had previously contacted Plaintiffs' counsel have now redacted their prior complaints.

For relief, Plaintiffs request that the Court order CBRE to notify every putative class member that it is unlawful for CBRE to retaliate against employees who contact Plaintiffs' counsel, to refrain from e-mailing or otherwise communicating with any putative class members about the lawsuit except after notice to Plaintiffs' counsel, and to not discuss this lawsuit with

- 2 -

putative class members except for speaking to managerial employees to investigate complaints of sexual harassment.

Plaintiffs additionally request that the Court authorize an unbiased scientific survey to gather evidence of CBRE's hostile corporate culture. They argue that CBRE's actions, combined with putative class members' fear of termination or other retaliation have made this survey necessary. To this end, Plaintiffs have retained an expert who has created a sample survey. Plaintiffs' goals include to gather evidence for the motion for class certification, and to discover which offices should be targeted during discovery. They ask the Court to grant leave to conduct the survey, approve the language and methodology, and require CBRE to produce a list of all current and former female employees. CBRE objects to Plaintiffs' two motions.

## II. Discussion

### A. Motion to Restrict CBRE's Communications with Putative Class Members

As both sides properly concede without argument, this Court has the power to restrict communications between defendants and putative class members before the class is even certified. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)[1]; Fed. R. Civ. P. 23(d)(3) & (5). Such control is designed to prevent abuse of the class action process but must fit within the

---

[1] Although *Gulf Oil* dealt with the authority of the trial courts to limit communications by named plaintiffs and their counsel to prospective class member, the general language of the opinion lends support for the conclusion that the enunciated standards should apply equally to communications between a defendant and prospective class members. 452 U.S. at 101 ("order limiting communications between parties and potential class members" should be based on a specific finding that takes into account "the rights of the parties"); *see also Bublitz v. E.I. DuPont De Nemours & Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000) (noting that *Gulf Oil* set forth the broad principles governing limitations on communications with potential class members).

confines of the applicable Federal Rules. *Gulf Oil*, 452 U.S. at 99-100 n.12 (discussing potential abuses). Communications that undermine the purposes of Rule 23 include misleading communications and communications which affect a putative class members' decision to participate in the class action. *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994).

As *Gulf Oil* made clear, however, before a court can restrict communications between counsel and parties, it must ensure that the order is "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 101. Plaintiffs argue that because the employer-employee relationship is inherently coercive, any communications between CBRE and the putative class members will be tainted. Plaintiffs rely on *Shores v. Publix Super Markets, Inc.*, 1996 WL 859985 WL (M.D. Fla. Nov. 25, 1996)[2] to support its contention that defendant employees should be prevented from communicating with putative class members.

In *Shores*, an employment discrimination case, the defendant employer sent out internal communications indicating that the union was behind the lawsuit, that class members' recovery was likely to be minimal, and that an adverse result in the lawsuit could hurt the price of its stock and put the members' jobs at risk. *Id.* at *2. The court granted the plaintiffs' motion to restrict the defendant's communications with class members after specifically finding that these internal communications were intended to discourage class members from participating in the litigation. *Id.* at *3. The court ordered the defendant to provide a curative notice to counteract its past

---

[2] *See Shores*, 1997 WL 714787, at *5 (vacating its prior order and ordering new restrictions on communications for settlement purposes).

- 4 -

communications with class members. *Id.* Significantly, even after the egregious conduct of the defendant, the court did not prohibit future internal communications with employees, it only required that such communications clearly indicate that they reflected the defendant's opinion, and that it was unlawful for the defendant to retaliate against any employee for participating in the lawsuit. *Id.*

*Shores* is distinguishable, however, because the court made specific findings that the defendant had intended to prohibit the class members from participating in the lawsuit. After review of CBRE's internal communications, we conclude that they are not intended to discourage putative class members from participation in this case. Plaintiffs respond that the communications should be restricted, regardless of CBRE's intent, due to the inherent coerciveness of the employer-employee relationship. *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999) (ordering that the defendant employer add a disclaimer to any future internal communications with putative class members even though court had no reason to think that it would mislead employees or coerce them into non-participation in the case); *Bublitz v. E.I. DuPont De Nemours & Co.*, 196 F.R.D. 545, 548 (S.D. Iowa 2000) (placing restrictions on defendant employer's ability to communicate settlement offers to employees even though no abuse had been shown).

Even if we do not need to make a finding that a particular abuse has occurred, i.e., that CBRE intended to mislead putative class members or prevent participation in the suit, we must still have a clear record of *threatened* abuses. *See Gulf Oil*, 452 U.S. at 102. Even if a *potentially* coercive situation exist, we still must have a "specific record showing by the moving party of the particular abuses by which it is threatened." *Id.* at 102 (quoting *Coles v. Marsh*, 560

F.2d 186, 189 (3rd Cir. 1977). Without a showing of actual harm, there must be some other evidence that justifies interfering with the defendant's communications. *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997); *Basco v. Wal-Mart Stores, Inc.*, 2002 WL 272384, at *3 (E.D. La. Feb. 25, 2002). This has not been met. While the Court does not approve of CBRE's direction in its first e-mail to its employees that they should deny knowledge of the facts of the case to third persons such as friends or clients, this does not threaten to undermine the class action process. Additionally, there is evidence that this e-mail was sent in response to publicity surrounding the filing of the complaint, not that it was sent to intimidate its employees.

The second e-mail, while denying liability in this case, reiterates the policy that all employees have the right to complain of harassment without fear of retaliation. Not coincidentally, this is similar to disclaimers ordered by courts that have granted plaintiffs' motions to restrict communications. *See e.g. Abdallah*, 186 F.R.D. at 679; *Shores*, 1996 WL 859985, at *3. We have no reason to suspect any future abuses or threatened abuses. And Plaintiffs' assertion that CBRE is intimidating its employees because two female employees have changed their stories is too speculative to support a clear finding of threatened abuses. Witnesses change their stories all the time, we are not going to make a finding that they have necessarily changed their version of the facts due to CBRE's intimidation. Furthermore, the only evidence that Plaintiffs present to support their allegations that the St. Louis managing director told women they should not talk to Wigington or Plaintiffs' counsel is the affidavit of Andrea Corey, a former employee of CBRE who left the company before the lawsuit was filed and who did not have first hand knowledge of any statements made by the director. CBRE offers the declaration

of Scott Stubblefield, the managing director, to refute this allegation. Stubblefield claims that female employees complained to him that Wigington was bothering them with unsolicited phone calls, and, after consulting with CBRE's attorneys, he told the women that they were free to talk to Wigington and her counsel if they wanted, but were not obligated to. Again, based on this conflicting testimony, we do not find that the record supports a clear finding of actual or threatened abuses.

The record to date does not support a finding of actual or threatened abuse sufficient to justify the relief that Plaintiffs seek. Thus, Plaintiffs' motion to restrict communications is denied.

### B. Motion For Approval of Scientific Survey

Plaintiffs also request that the Court approve a scientific survey to be performed in conjunction with the Defendant's appointed expert. They claim that this is necessary to counteract the Defendant's abuses and it will allow both sides to appropriately communicate with the putative class. CBRE objects on the grounds that the Plaintiffs' proposed survey is not scientific.

As discussed above, we did not find that CBRE's communications to date were abusive or threatened abuse of the Federal Rules. Thus, we do not find any reason to sanction a survey or to approve the methodology of the survey. That will be left up to the parties to litigate. Similarly, there is no reason to compel Defendant to participate in the survey.

Plaintiffs' argument that statistical evidence is commonly and properly used in these types of cases to support motions to certify a class is well taken, but premature. *See c.f. McReynolds v.*

*Sodexho Marriot Servs., Inc.*, 208 F.R.D. 428, 441-48 (D.D.C. Cir. 2002) (relying on statistical evidence in granting motion for class certification in employment discrimination case); *Wilfong v. Rent-A-Center, Inc.*, 2001 WL 1795093, at *3 (S.D. Ill. Dec. 27, 2001) (same). Merely because statistical evidence may be useful for the Plaintiffs is no reason for the Court or Defendant to participate in taking the survey. Plaintiffs of course do not need leave of court to take the survey, and this opinion in no way reflects any finding that their proposed survey is valid or invalid, or admissible or inadmissible.

On a final note, Plaintiffs have asked the Court to order CBRE to produce an address list of all current and former female employees since January 1, 1997. Upon questioning in oral argument, Defendant indicated that they object to the request as overbroad. Nonetheless, even if this is a large number, the putative class includes all current and former female employees so the request is not overbroad. The identities of these women are clearly relevant. Furthermore, statistical evidence may potentially be used by Plaintiffs at the class certification and trial stage. While Defendant might prefer to remain in the superior litigation position of being able to investigate what evidence any of these women might be able to offer, while denying Plaintiffs the same access, it has not persuaded us that Plaintiffs' request should not be granted. Defendant is therefore ordered to produce the list of female employee as requested by Plaintiffs.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion to restrict communications is denied. Plaintiffs' motion for approval of a scientific survey is denied in part and granted in part. While the Court will not approve the methodology of the proposed survey, or force the Defendant to

participate in taking the survey, Defendant must produce a list of the names and addresses of its current and former female employees in all offices since January 1, 1997, within thirty days.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: September 15, 2003.

Copies have been mailed to:

| | |
|---|---|
| KENNETH A. WEXLER, Esq.<br>ELIZABETH FEGAN HARTWEG, Esq.<br>The Wexler Firm<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 | BRENDA H. FEIS, Esq.<br>SARI M. ALAMUDDIN, Esq.<br>DEBORAH S. DAVIDSON, Esq.<br>Seyfarth Shaw<br>55 East Monroe Street<br>Suite 4200<br>Chicago, IL 60603 |
| JENIPHR A. E. BRECKENRIDGE, Esq.<br>Hagens Berman, L.L.P.<br>1301 Fifth Avenue<br>Suite 2929<br>Seattle, WA 98101 | |
| JoDEE FAVRE, Esq.<br>Favre & Allen<br>121 East Main Street<br>Belleville, IL 62220 | |
| Attorneys for Plaintiff | Attorneys for Defendant |