# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AMY WIGINTON, KRISTINE MORAN, NORMA PLANK FETHLER, as Successor in Interest to Dondi Plank, ANDREA COREY and OLIVIA KNAPP, individually and on behalf of all persons similarly situated, | ) ) ) ) ) ) | |
| | ) | Case No. 02 CV 6832 |
| Plaintiffs, | ) ) | |
| | ) | Judge Wayne Andersen |
| v. | ) ) | |
| | ) | Magistrate Judge Ashman |
| CB RICHARD ELLIS, INC., | ) ) | |
| Defendant. | ) ) | |

## CORRECTED SETTLEMENT AGREEMENT AND CONSENT DECREE

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................1

II. DEFINITIONS ......................................................................................3
   2.1. "Appropriate Disciplinary and/or Remedial Action" ............................3
   2.2. "Best Efforts" ...................................................................................4
   2.3. "CBRE" ...........................................................................................4
   2.4. "Claim Form" or "Claim Forms" .......................................................4
   2.5. "Claim Form Deadline" .....................................................................4
   2.6. "Claimant" .......................................................................................4
   2.7. "Claims Administrator" or "Settlement Administrator"........................4
   2.8. "Claims Process" ..............................................................................4
   2.9. "Claims Standard(s)" .........................................................................4
   2.10. "Class" or "Plaintiff Class" ...............................................................4
   2.11. "Class Counsel" ................................................................................5
   2.12. "Class Member" ...............................................................................5
   2.13. "Class Period", ................................................................................5
   2.14. "Consent Decree" or "Decree" ..........................................................5
   2.15. "Court" ............................................................................................6
   2.16. "EEOC Guidance" ............................................................................6
   2.17. "Effective Date" ...............................................................................6
   2.18. "Eligible Claim" ...............................................................................6
   2.19. "Expiration Date" .............................................................................7
   2.20. "Final Approval" ..............................................................................7
   2.21. "Liability Period" .............................................................................7
   2.22. The "Litigation" and/or "This Case" ..................................................7
   2.23. "Named Plaintiffs" ...........................................................................8
   2.24. "Notice" ..........................................................................................8
   2.25. "Parties" ..........................................................................................8
   2.26. "Preliminary Approval" ....................................................................8
   2.27. "Released Claims" ............................................................................8
   2.28. "Settlement" ....................................................................................9
   2.29. "Settlement Class Member" ..............................................................9
   2.30. "Service" .........................................................................................9
   2.31. "Sexual Harassment" ........................................................................9
   2.32. "Special Master" ..............................................................................9
   2.33. "Tier 1 Claim Standard" ....................................................................9
   2.34. "Tier 2 Claim Standard" ..................................................................10
   2.35. "Tier 3 Claim Standard" ..................................................................10
   2.36. "Tier Program" ..............................................................................10
   2.37. "Title VII" .....................................................................................10

III.    GOALS OF THE SETTLEMENT ...................................................................11
        3.1.    Goals Of The Consent Decree and Settlement Agreement.....................11

IV.     JURISDICTION ...........................................................................................11

V.      EFFECTIVE DATE AND DURATION OF THE CONSENT DECREE .......................12
        5.1.    Effect Of Consent Decree ...................................................................12
        5.2.    Joint Request For A Court Order ..........................................................12
        5.3.    Period of Force and Effect ..................................................................12

VI.     SCOPE OF THE CONSENT DECREE ...............................................................12
        6.1.    Scope Of The Consent Decree .............................................................12
        6.2.    Persons Covered ................................................................................13
        6.3.    On-Going Best Efforts To Ensure The Effectuation Of The Settlement ..............13
        6.4.    No Requirement To Violate Any Law ....................................................13

VII.    EQUITABLE RELIEF ......................................................................................13
        7.1.    No Automatic Injunction ....................................................................13
        7.2.    Sexual Harassment ............................................................................13
        7.3.    Retaliation ......................................................................................14
        7.4.    Statement of Intolerance of Sexual Harassment ....................................14
        7.5.    Harassment-Free Workplace Policy ......................................................15
        7.6.    Distribution of Harassment-Free Workplace Policy ..................................16
        7.7.    Complaint Procedures ........................................................................16
        7.8.    Policies Designed to Promote Supervisor Accountability .........................19
        7.9.    Consistency of Policies ......................................................................20
        7.10.   Sexual Harassment Training ................................................................20

VIII.   APPOINTMENT OF SPECIAL MASTER AND REPORTING
        OBLIGATIONS.............................................................................................21
        8.1.    Special Master ..................................................................................21
        8.2.    Content of Reports ............................................................................21
        8.3.    Timetable for Reports ........................................................................22
        8.4.    Special Master's Follow-Up on Reports ................................................22
        8.5.    Class Counsel's Follow-Up on Reports .................................................23

IX.     MONETARY RELIEF .....................................................................................23
        9.1.    Tier Program ....................................................................................23

X.      CHARITABLE CONTRIBUTION .......................................................................37
        10.1.   Charitable Contribution ......................................................................37

XI.     RELEASE AND COVENANT NOT TO SUE .........................................................37
        11.3.   Covenant Not to Sue .........................................................................38

XII.    GENERAL PROVISIONS ...................................................................................39
      12.1.   No Admission Of Liability ................................................................39
      12.2.   No Court Findings As to Liability ....................................................39
      12.3.   Not Admissible In Any Other Proceeding ........................................39
      12.4.   Responsibility of Settlement Class Members and Named Plaintiffs for Tax
             Liabilities ........................................................................................40

XIII.   INCENTIVE AWARDS TO NAMED PLAINTIFFS.......................................41

XIV.   ATTORNEYS' FEES AND COSTS ................................................................42

XV.    PRELIMINARY APPROVAL HEARING .....................................................45

XVI.   NOTICE..........................................................................................................46

XVII.  OPT-OUTS .....................................................................................................47

XVIII. OBJECTIONS/COMMENTS TO SETTLEMENT...........................................48

XIX.   FAIRNESS HEARING ...................................................................................49

XX.    EXCESSIVE NUMBER OF OPT-OUTS ......................................................50

XXI.   ENFORCEMENT PROCEDURE ...................................................................50
      21.1.   Resolution Of Parties' Disputes......................................................50
      21.2.   Court Intervention ...........................................................................51
      21.3.   Fees Incurred to Enforce the Decree ...............................................51
      21.4.   No Third-Party Rights.....................................................................52
      21.5.   Status of Allegedly Injured Individuals ..........................................52
      21.6.   No Individual or Independent Right to Seek Enforcement................52

XXII.  CONSTRUCTION............................................................................................52
      22.1.   Governing Law ................................................................................52
      22.2.   Entire Agreement ............................................................................52
      22.3.   Severability ....................................................................................53
      22.4.   Joint Document Of The Parties........................................................53
      22.5.   Agreed Modifications ......................................................................53
      22.6.   Headings .........................................................................................54
      22.7.   Non-Waiver.....................................................................................54
      22.8.   Calculation Of Time .......................................................................54
      22.9.   Notice To The Parties .....................................................................54
      22.10.  Counterparts ...................................................................................55

XXIII. STATEMENTS TO THE MEDIA OR GENERAL PUBLIC ............................................55

XXIV. REPRESENTATIONS BY CLASS COUNSEL ................................................................56

XXV.  VOLUNTARY DISMISSAL WITH PREJUDICE............................................................57

## I.  INTRODUCTION

On September 25, 2002, Plaintiff Amy Wiginton filed the lawsuit entitled *Wiginton v. CB Richard Ellis, Inc.*, 02 CV 6832 (the "Litigation"), on behalf of a class of current and former female employees (the "Class"), alleging that CBRE subjected female employees to Sexual Harassment as defined herein, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").  Subsequently, Kristine Moran, Andrea Corey, Dondi Plank, and Olivia Knapp (collectively with Amy Wiginton, the "Named Plaintiffs") joined the Litigation as additional Named Plaintiffs.  CBRE denied, and continues to deny, all allegations of wrongdoing and liability in the Litigation.  More particularly, CBRE categorically denies that it subjected female employees to sexual harassment or condoned or tolerated any such conduct, denies any and all liability to the Named Plaintiffs and the Class, and denies that it has violated Title VII or any applicable statute.

This Consent Decree resolves all Class and individual Sexual Harassment Claims (as defined herein) raised in the Litigation as defined in Section 2.27 below ("Released Claims"). No finding of liability has been made.

The Parties, as defined below in Paragraph 2.25, engaged in extensive motion practice and Class discovery for more than two years, including scores of depositions nationwide and the exchange of thousands of documents, as well as significant electronic and third-party discovery. Through this exhaustive process, the Parties developed a thorough understanding of the facts and applicable law, which enabled them to assess the relative merits of the claims and defenses asserted by each side.  On August 31, 2004, the Named Plaintiffs filed a Motion for Class Certification seeking to certify the following class:

> All female employees who have been employed by defendant CB Richard Ellis, Inc. or its predecessors from January 1, 1999 to the present.

After extensive evidentiary submissions by the Parties, including expert reports, the Named Plaintiffs' motion was fully briefed as of January 21, 2005.

Immediately following the close of briefing on class certification, the parties retained a professional mediator for the purpose of assisting in settlement discussions. Hard-fought and extremely difficult, these mediated settlement negotiations required extensive thought and discussion on both sides. Ultimately, the settlement discussions, which were conducted at arms-length, gained traction and consistency in December 2005 with the aid of the United States Magistrate Judge and the United States District Court Judge presiding over This Case. During the course of those discussions and specifically at the Court's request, the Motion for Class Certification was withdrawn without prejudice on September 15, 2006, pending the outcome of settlement discussions. Therefore, the Court did not rule on the Motion for class certification.

Thereafter, the parties continued to engage in settlement negotiations. Throughout, the negotiations were conducted at arms-length with the assistance of, at various times, a professional mediator, as well as the Honorable Judge Wayne Andersen and Magistrate Judge Martin Ashman. These efforts ultimately resulted in an agreement to settle this action prior to a ruling on class certification, subject to this Court's review and approval after notice, an opportunity for members of the Class to object or opt out of the settlement, and a fairness hearing as required by Rule 23 of the Federal Rules of Civil Procedure. The Parties intend to seek certification of a settlement class under Rule 23(e) for monetary and injunctive relief as part of the process for seeking approval of this Consent Decree. However, if this settlement fails to be

approved, the Named Plaintiffs retain all rights to seek class certification, and Defendant retains all rights to object and to oppose Plaintiffs' motion for class certification.

This Consent Decree is entered into by the Named Plaintiffs, individually and on behalf of the Settlement Class Members, and by Defendant. The Parties agree that, after carefully considering the facts and applicable law and the uncertainty of continued litigation, and as a result of having engaged in extensive arm's-length negotiations, it would be in their best interests to finally resolve the Class' Sexual Harassment Claims (including individual and class Sexual Harassment Claims) by entry of this Consent Decree. The Parties anticipate that upon its entry by this Court, this Consent Decree shall be final and binding upon the Settlement Class, the Parties, their successors, and assigns and shall release all Released Claims to the extent allowed under Rule 23. The Parties, by and through their respective undersigned counsel, have agreed to this Consent Decree on the terms and conditions set forth below and subject to the approval of this Court.

## II.     DEFINITIONS

The following terms, when used in this Consent Decree, shall have the following meanings as set forth below. All terms defined in the singular shall have the same meaning when used in the plural, and all terms defined in the plural shall have the same meaning when used in the singular.

**2.1.    "Appropriate Disciplinary and/or Remedial Action"** means the amount of disciplinary and/or remedial action that CBRE believes in good faith to be necessary in order to prevent an alleged harasser from engaging in any further harassment or retaliation, taking into account any prior offenses under the harassment policy then in effect.

3

**2.2.** **"Best Efforts"** means steps taken in good faith and reasonably designed to achieve compliance with specified objectives to which the best efforts are directed.

**2.3.** **"CBRE"** means CB Richard Ellis, Inc., and each and all of current and former employees, salespeople classified as independent contractors, supervisors, officers, and directors during the Class Period (except where otherwise specified).

**2.4.** "**Claim Form**" or "**Claim Forms**" shall mean, individually or collectively, the respective claim forms entitled "Claim Form for Tier 1 Claims" (also known as the "Form-T1") or the "Claim Form for Tier 2 and Tier 3 Claims" (also known as the "Form-T2/3").

**2.5.** "**Claim Form Deadline**" shall mean the deadline by which Claim Forms must be post-marked as being sent to the Claims Administrator, which deadline will be 120 days from the date that Notice is post-marked as having been mailed to Class Members.

**2.6.** **"Claimant"** means any Settlement Class Member who submits a Claim Form pursuant to Section IX below. "Claimant" specifically excludes any Settlement Class Member who previously executed a valid and enforceable release of her Sexual Harassment Claims, unless such release specifically provides for recovery under this Consent Decree.

**2.7.** **"Claims Administrator"** or **"Settlement Administrator"** means Rust Consulting or another person or entity agreed upon by Class Counsel and CBRE's Counsel to conduct certain tasks, as described herein.

**2.8.** "**Claims Process**" means the Tier Program described in Section IX below.

**2.9.** "**Claims Standard(s)**" shall mean the Claims Standards as defined in Paragraphs 2.33 and 2.34, respectively, below.

**2.10.** **"Class" or "Plaintiff Class"** means the class certified by the Court solely for purposes of effectuating and entering this Consent Decree:

All female employees who were or have been employed by CBRE at any time during the Class Period.

**2.11.** **"Class Counsel"** means the law firms of Wexler Toriseva Wallace LLP, Hagens Berman Sobol Shapiro LLP, Favre Law Offices LLC and Gustafson Gluek PLLC.

**2.12.** **"Class Member"** means any female who was or has been employed by CBRE at any time during the Class Period.

**2.13.** "**Class Period**", for purposes of settlement only, shall mean the period between January 1, 1999 and the date of Preliminary Approval of the settlement by the Court (October 4, 2007).

**2.14.** **"Consent Decree" or "Decree"** means this document, which has been signed by the Named Plaintiffs and by counsel of record for the Parties, subject to final approval and adoption by the Court, and which contains the following attached exhibits:

EXHIBIT A:   PRELIMINARY APPROVAL ORDER

EXHIBIT B:   NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION

EXHIBIT B-1: SUMMARY OF THE PROCEDURES AND CLAIMS STANDARDS FOR EACH OF THE THREE TIERS

EXHIBIT B-2: CLAIM FORM FOR TIER 1 CLAIMS (FORM-T1)

EXHIBIT B-3:   CLAIM FORM FOR TIER 2 AND TIER 3 CLAIMS (FORM-T2/3)

EXHIBIT C:  REQUEST FOR EXCLUSION

EXHIBIT D: EEOC'S POLICY GUIDANCE

EXHIBIT E: [PROPOSED] FINAL ORDER AND JUDGMENT AS TO CLASS CLAIMS GRANTING FINAL APPROVAL, APPROVING THE IMPLEMENTATION OF THE TIER PROGRAM, AND APPROVING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS FEES AND LITIGATION EXPENSES AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES

EXHIBIT F:   JOINT PUBLICITY STATEMENT

EXHIBIT G:  WOMEN SCHOLARS PROGRAM OVERVIEW

2.15. "**Court**" means the United States District Court for the Northern District of Illinois, and the Judge thereof having been assigned to preside over the Litigation, or proceedings relevant to the Case.

2.16. "**EEOC Guidance**" shall mean the EEOC's Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism, N-915-048, dated January 12, 1990; EEOC'S Policy Guidance On Current Issues Of Sexual Harassment, N-915-050, dated March 19, 1990; EEOC's Enforcement Guidance on Harris v. Forklift Sys., Inc., N-915-002, dated March 8, 1994; and EEOC's Enforcement Guidance: Vicarious Liability For Unlawful Harassment By Supervisors, N-915-002, dated June 18, 1999, attached to this Decree as Exhibit C. EEOC Guidance may include additional published EEOC Policy or Enforcement Guidance if agreed upon in writing by all Parties.

2.17. "**Effective Date**" means the date on which the time for filing an appeal from the Court's final approval of this Consent Decree has either expired without an appeal being filed, or if later, after any appeal has been fully resolved upholding the Decree (including requests for rehearing, rehearing *en banc*, and petitions for *certiorari*), at which time the obligations set forth in this Consent Decree and the terms of this Consent Decree become binding on CBRE, the Named Plaintiffs, the Settlement Class, Class Counsel, and anyone else who has undertaken an obligation under this Decree.

2.18. "**Eligible Claim**" means any Sexual Harassment Claim of a Settlement Class Member, including class and individual claims, against CBRE that arose or could have arisen at any time between January 1, 1999 and the date of Preliminary Approval based upon alleged

6

sexual harassment experienced at CBRE (and not at a predecessor company that was subsequently acquired by CBRE).

2.19. **"Expiration Date"** means the date on which this Consent Decree and any order of the Court related to the Consent Decree and these settlement proceedings shall expire and shall be without any force or effect. The Expiration Date shall be two (2) years from the Effective Date, with the caveat that the Parties may thereafter conclude any enforcement proceedings post-delivery of CBRE's second annual report to the Special Master pursuant to Section VIII below, for which sole purpose the Court would retain jurisdiction following the Expiration Date. Regardless of whether such enforcement proceedings continue past the Expiration Date, no substantive obligations assumed by CBRE would survive past the Expiration Date (beyond those that Class Counsel seek to enforce after the Expiration Date *vis-à-vis* CBRE's obligations prior to the Expiration Date).

2.20. **"Final Approval"** means the entry of the Court's order granting final approval of this Consent Decree, which reflects that the Court concludes that the terms of this Consent Decree are fair, reasonable and adequate to the Class as a whole.

2.21. **"Liability Period"** means the Class Period.

2.22. **The "Litigation" and/or "This Case"** means all proceedings relating to or arising from *Wiginton, et al. v. CB Richard Ellis, Inc.*, 02 CV 6832 (N.D. Ill.), specifically excluding any and all individual claims under the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), as amended, the Equal Pay Act of 1963, 29 S.C. § 201, as amended, or claims of retaliation.

**2.23.** **"Named Plaintiffs"** means the individual plaintiffs who brought suit in This Case, including Amy Wiginton, Kristine Moran, Norma Plank Fethler, as successor in interest to Dondi Plank, Andrea Corey n/k/a Andrea Scott, and Olivia Knapp.

**2.24.** "**Notice**" shall mean the Notice Of Pendency And Proposed Settlement Of Class Action together with its exhibits, including the Claim Form For Tier 1 Claims (Form-T1), and the Claim Form For Tier 2 And Tier 3 Claims (Form-T2/3).

**2.25.** **"Parties"** means the Named Plaintiffs, individually and on behalf of the Class, and CBRE.

**2.26.** **"Preliminary Approval"** means the entry of the Court's Order granting preliminary approval of this Consent Decree, which reflects that the Court concludes that the terms of this Consent Decree appear sufficiently fair, reasonable, and adequate to the Class as a whole to warrant notice to the Class, an opportunity for Class Members to object or opt out, and a fairness hearing to consider Final Approval of the Consent Decree.

**2.27.** "**Released Claims**" means all Sexual Harassment Claims that were made or could have been made by the Named Plaintiffs or by any Class Members individually and/or on behalf of the Class against CBRE in this action under Title VII, 42 U.S.C. §2000 *et seq.*, as amended. Released Claims expressly does not include: (i) any and all individual or class claims under Title VII that any person, including any member of the Settlement Class and/or any Claimant has, whether known or unknown, against any company acquired by or merged with CBRE with respect to any acts or occurrences that occurred prior to the effective dates for the acquisition or merger; (ii) any and all individual or class claims under the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), as amended; (iii) any and all individual or class claims under the Equal Pay

Act of 1963, 29 U.S.C. § 201, as amended; or (iv) any and all individual or class claims for retaliation.

**2.28.** **"Settlement"** means the settlement terms embodied in this Consent Decree.

**2.29.** **"Settlement Class Member"** means any Class Member who does not opt out of the claims process of the Settlement, and **"Settlement Class"** means that group of individuals as a whole.

**2.30.** **"Service"** means delivery of notice and/or papers, and shall be defined as service as specified in the Federal Rules of Civil Procedure.

**2.31.** **"Sexual Harassment"** means unlawful sexual harassment in violation of Title VII, including hostile work environment and quid pro quo sexual harassment, and **"Sexual Harassment Claims"** or **"Claims of Sexual Harassment"** means claims of hostile work environment and/or quid pro quo sexual harassment that were or could have been asserted by female employees or ex-employees of CBRE against CBRE.

**2.32.** **"Special Master"** means the individual chosen by agreement of the Parties to administer the Tier Program set forth in Section XI and to serve as the Special Master as set forth in Section IX.

**2.33.** **"Tier 1 Claim Standard"** means that, for a Claimant to receive an award under Tier 1, she must allege to the satisfaction of the Special Master, based on the individual detail provided by the Claimant in her Claim Form and the class-wide evidence as set forth in Section 9.1.4, that she was subjected to Sexual Harassment. The Special Master shall use the EEOC Guidance as a guide in evaluating Tier 1 Claims and, specifically, whether the Claimant has alleged Sexual Harassment. By express agreement of the Parties, the Special Master must accept the allegations of the Tier 1 Claimant as true, Tier 1 Claimants are not required to identify the

9

alleged harassers by name or exact dates of the harassment, and CBRE is not permitted to know of or rebut the allegations of any Tier 1 Claimant.

2.34. **"Tier 2 Claim Standard"** means that, for a Tier 2 Claimant to receive an award under Tier 2, she must demonstrate to the satisfaction of the Special Master that she was subjected to Sexual Harassment, based on the complete Form T2/3, the information provided by CBRE in its response, the class-wide evidence as set forth in Section 9.1.4, and as otherwise permitted by the Special Master. The Special Master shall also use the EEOC Guidance as a guide in evaluating Tier 2 Claims, in resolving credibility conflicts and in determining whether the Claimant has demonstrated to the satisfaction of the Special Master that she was subjected to Sexual Harassment.

2.35. **"Tier 3 Claim Standard"** means that, for a Tier 3 Claimant to receive an award under Tier 3, she must demonstrate to the satisfaction of the Special Master that she was subjected to Sexual Harassment, based on the complete Form-T2/3, information presented by CBRE in its written response and position statement, any evidence collected during the Special Master's additional investigation of that Claimant's allegations, the evidence presented at the Tier 3 Claimant's Hearing, and the class-wide evidence as set forth in Section 9.1.4. The Special Master shall also use the EEOC Guidance as a guide in evaluating Tier 3 Claims, in resolving credibility conflicts and in determining whether the Claimant has demonstrated to the satisfaction of the Special Master that she was subjected to Sexual Harassment.

2.36. **"Tier Program"** means the three-tiered claims process/procedure for seeking and awarding monetary payments defined and set forth in Section IX.

2.37. **"Title VII"** means the Civil Rights Act of 1964, as amended in 1991 42 U.S.C. § 2000e, *et seq.*

10

## III. GOALS OF THE SETTLEMENT

**3.1. Goals Of The Consent Decree and Settlement Agreement.** The Parties enter into this Consent Decree and Settlement Agreement to achieve the following goals: (a) to resolve all Released Claims; (b) to ensure that Settlement Class Members are fairly compensated for release of the Released Claims; and (c) to ensure that effective mechanisms are in place to prevent and remedy unlawful Sexual Harassment.

**3.2 Court Findings.** If the Court approves this Consent Decree, the Court will have found, and the Parties agree, as follows: (a) the terms of this Consent Decree are adequate, fair, and reasonable to the Class as a whole; (b) this Consent Decree conforms with the Federal Rules of Civil Procedure and is not in derogation of the rights or privileges of any person, any party, or the Class; and (c) the final approval of this Consent Decree will be in the best interests of the Parties and, in particular, the Class.

## IV. JURISDICTION

**4.1.** The Parties agree that the Court has jurisdiction over the Parties and the subject matter of the Litigation. The Litigation asserts claims under Title VII that, if proven, would authorize the Court to grant the monetary and equitable relief set forth in this Consent Decree. Venue is proper in this District. The Parties agree that this Court shall retain jurisdiction of the Litigation during the duration of this Consent Decree for the purpose of entering all orders, judgments and decrees that may be necessary to implement the relief provided herein. The procedures described below are not intended to diminish this Court's inherent power to enforce any provision of this Consent Decree. All Released Claims shall be dismissed with prejudice upon the Effective Date of this Consent Decree, provided that the Court retains jurisdiction to enforce the terms of this Consent Decree as described in Paragraph 2.19.

**4.2.**      A copy of the Preliminary Approval Order as well as the [Proposed] Final Order And Judgment As To Class Claims Granting Final Approval, Approving The Implementation Of The Tier Program, And Approving Class Counsel's Application For Attorneys Fees And Litigation Expenses And Incentive Awards To Class Representatives to be entered are attached hereto as Exhibits A and D.

**V.      EFFECTIVE DATE AND DURATION OF THE CONSENT DECREE**

**5.1.      Effect Of Consent Decree.**   Upon its entry by the Court following Final Approval, the Consent Decree shall constitute an order of the Court and all of its provisions will become enforceable by the Parties in the manner set forth in this Consent Decree.  The Parties, including CBRE, the Named Plaintiffs, and Class Counsel on behalf of the Class, agree that they shall not appeal from the Consent Decree or the Court's Order.

**5.2.      Joint Request For A Court Order.**  The Parties agree that they will seek entry of the Orders in the form attached hereto and fully incorporated herein as Exhibits A and D, which dismisses the Released Claims against CBRE with prejudice, and without costs to any Party except as expressly provided herein, and which incorporates a Release of the Released Claims on behalf of the Named Plaintiffs and the Settlement Class as set forth in Paragraph XI.

**5.3.      Period of Force and Effect.**  This Consent Decree shall become effective on the Effective Date and expire, by its own terms, on the Expiration Date.

**VI.      SCOPE OF THE CONSENT DECREE**

**6.1.      Scope Of The Consent Decree**.   This Consent Decree resolves the Released Claims.

**6.2.    Persons Covered.**

**a.    Settlement Class.**  For settlement purposes only, the Court will certify the following class:

> All female employees who have been employed by defendant CB Richard Ellis, Inc. during the Class Period.

**b.    Opt–Out Rights.**  If this Consent Decree is approved by the Court, at the Effective Date, all persons within the Class are bound by its terms, except those Class Members who effectively exercise a right to opt out of the Class and the settlement.  Class Members who elect to opt out must complete the Request for Exclusion attached hereto as Exhibit C.

**6.3.    On-Going Best Efforts To Ensure The Effectuation Of The Settlement**.  The Parties agree to make and undertake their best efforts on an on-going basis to effectuate, as well as to seek entry of this Consent Decree, or if applicable, to defend, this Consent Decree from any legal challenge by appeal, collateral attack, objection, or otherwise.

**6.4.    No Requirement To Violate Any Law**.  Nothing in this Consent Decree shall require CBRE to violate any applicable law, ordinance, or regulation.

**VII.    EQUITABLE RELIEF**

**7.1.    No Automatic Injunction.**  This Consent Decree shall not operate in any way as an automatic injunction.  CBRE agrees to abide by the terms of this Consent Decree and all applicable federal and state employment laws including, but not limited to, Title VII of the Civil Rights Act of 1964.

**7.2.    Sexual Harassment**.  CBRE agrees to and, to the extent it already is, agrees to continue to comply with the provisions of Title VII of the Civil Rights Act of 1964, as amended, and, specifically, agrees not to engage in any action, policy or practice that is intended to or is

13

known by CBRE to have the effect of sexually harassing any female employee, and agrees not to create, facilitate, or tolerate the existence of a work environment that is sexually hostile to female employees.

**7.3.** **Retaliation**. CBRE agrees to and, to the extent it already is, agrees to continue to comply with the provisions of Title VII of the Civil Rights Act of 1964, as amended, and specifically agrees not to engage in, implement, or tolerate any action, policy, or practice with the purpose or effect of retaliating against any current or former employee for: opposing Sexual Harassment, filing a Charge of Discrimination, testifying or participating in any investigation (including internal investigations), proceeding, or hearing in connection with This Case and/or relating to any claim of Sexual Harassment, being identified as a witness in this action, asserting any rights under this Consent Decree, or seeking and/or receiving any monetary or non-monetary relief under this Consent Decree.

**7.4.** **Statement of Intolerance of Sexual Harassment**. CBRE affirms the following "Statement of Intolerance of Sexual Harassment:"

> CB Richard Ellis, Inc. is firmly committed to, and reaffirms its commitment to, maintaining a policy of intolerance of Sexual Harassment and retaliation against individuals who report Sexual Harassment or retaliation in the Company's workplace; to swiftly and firmly responding to any acts of Sexual Harassment or retaliation of which the Company becomes aware; to maintaining a disciplinary system that is designed to strongly deter future acts of Sexual Harassment or retaliation; to promoting and maintaining a work environment free of behavior or objects that are hostile to women; and to monitoring its workplace in order to ensure tolerance, respect, and dignity for all employees.

This Paragraph does not create any contractual causes of action or other rights that would not otherwise exist.

14

**7.5.** **Harassment-Free Workplace Policy**. CBRE agrees that, within 90 days of the Effective Date of the agreement, it shall revise its Harassment-Free Workplace Policy, as necessary, in order to:

**7.5.1.** provide examples to supplement the definition of Sexual Harassment and sex-based harassment;

**7.5.2.** include strong non-retaliation language (for making complaints of Sexual Harassment) with examples to supplement the definition of retaliation;

**7.5.3.** provide for Appropriate Disciplinary and/or Remedial Action for incidents of Sexual Harassment, sex-based harassment and/or retaliation (for making complaints of Sexual Harassment);

**7.5.4.** provide that complaints of Sexual Harassment and/or retaliation (for making complaints of Sexual Harassment) will be accepted by CBRE in writing and orally, with oral complaints being documented in compliance with CBRE's complaint-documentation obligations (addressed in Paragraphs 7.7.7-7.7.9);

**7.5.5.** establish a timetable that requires CBRE: (a) to assign the Sexual Harassment complaints to an investigator within two (2) business days; (b) to complete investigations within 45 days, with any exceptions being noted and the circumstances explained in the report to the Special Master; and (c) to implement Appropriate Disciplinary and/or Remedial Action promptly upon conclusion of an investigation, where appropriate;

**7.5.6.** indicate that, promptly upon the conclusion of its investigation of a Sexual Harassment complaint, CBRE will notify the complainant that the investigation has been concluded and closed, whether a violation of CBRE's Harassment-Free Workplace Policy was substantiated, and that Appropriate Disciplinary and/or Remedial Action, if any, has been taken.

CBRE will also encourage the complainant to notify the Company of any further problems. The complainant will not receive details of the Appropriate Disciplinary and/or Remedial Action, if any, unless it directly affects her (*e.g.*, change in reporting relationship, location move, *etc.*);

       **7.5.7.** reflect that the revised Harassment-Free Workplace Policy supersedes all existing Sexual Harassment policies;

       **7.5.8.** ensure that the Harassment-Free Workplace Policy is contained in a single document, distributed among CBRE's offices, posted and accessible on the Intranet, and made part of any organized training on Sexual Harassment and/or workplace conduct (except that, to the extent other policies relate to the subject matter of the Harassment-Free Workplace Policy, CBRE shall direct employees to that policy).

       **7.6.** **Distribution of Harassment-Free Workplace Policy**. CBRE agrees to electronically circulate its Harassment-Free Workplace Policy annually. The acknowledgement accompanying the Harassment-Free Workplace Policy will confirm that the recipient received and read the policy, and that the recipient knows where and how to report a harassment complaint. The acknowledgment will notify the recipient that, if she does not know where and how to report a complaint, she can ask CBRE for additional information and CBRE will provide such information before she signs or otherwise completes the acknowledgement.

       **7.7.** **Complaint Procedures**. CBRE agrees that, within 90 days of the Effective Date of the agreement, it shall revise its complaint procedures to the extent necessary to ensure that they provide CBRE's employees with convenient, confidential, and reliable mechanisms for reporting incidents of Sexual Harassment and retaliation to the extent set forth and permitted under this Section. More specifically, CBRE agrees as follows:

**7.7.1.**    CBRE shall notify employees by routinely and continuously posting on CBRE's internal website that specific individuals/positions have been designated as persons who may be contacted to report any incidents of Sexual Harassment and retaliation, and shall provide the name, office, where applicable, title, work location, and all available contact information for each such person.  These individuals shall include:

**7.7.1.1.**    Within each office, the Senior Office Operations Manager or Office Operations Manager (or equivalent position, if any, that does not report to the Managing Director within such office) and Managing Director shall be designated as and will serve as two (2) contacts authorized to receive harassment and retaliation complaints from employees in that office.

**7.7.1.2.**    CBRE further agrees to designate the "General Counsel – Employment" as an individual authorized to receive Sexual Harassment and retaliation complaints; CBRE will also advise employees that a complaint may be made to any Human Resources Director, Human Resources Manager, Human Resources Specialist, or the Human Resources Service Center, any member of senior management, any lawyer in the Legal Department, the Chief Compliance Officer, or its anonymous whistleblower hotline.

**7.7.2.**    CBRE agrees to continue to maintain a whistleblower hotline (an "Ethics Hotline") operated by a third-party that will accept anonymous complaints, document such complaints as received, and promptly route those complaints to the Human Resources Department to be investigated consistent with the principles otherwise discussed herein.

**7.7.3.**    CBRE agrees that it shall revise its policies to the extent necessary to enable complaining parties to be interviewed by CBRE about their complaints, at the complaining party's election, in a confidential manner, including allowing the complainant to

provide the information in a location outside of the employee's work area and/or at an off-site location.

**7.7.4.** CBRE agrees that its complaint procedure shall not impose upon individuals seeking to make a complaint alleging Sexual Harassment and/or retaliation (for making complaints of Sexual Harassment) any requirements that are undue or more burdensome than those imposed upon individuals who make other complaints of comparable gravity.

**7.7.5.** CBRE agrees that information regarding complaints and investigations will only be shared with individuals who have a business need to know in connection with the investigation or for purposes of any personnel action with respect to the alleged Sexual Harassment.

**7.7.6.** CBRE agrees that it shall revise its complaint handling and disciplinary procedures to the extent necessary to ensure that all complaints of Sexual Harassment and/or retaliation are investigated and addressed promptly, and in accordance with the timetable described in Paragraph 7.5.5, *supra*.

**7.7.7.** CBRE agrees that it will instruct and require the original designated recipient of a complaint to document the complaint and related information received from a complainant as soon as practicable.

**7.7.8.** CBRE agrees that it will instruct and require the original designated recipient of a complaint to provide written copies of the documentation of the complaint to designees in the Legal Department and the Human Resources Department.  In the event that the complaint is about a member of either of the Legal Department or Human Resources Department, the complaint recipient will provide copies of the documented complaint to the designee in the other department as well as the Chief Operating Officer.

**7.7.9.**    CBRE agrees to maintain complaint investigation records in a centralized and secure location – specifically, CBRE's computer system – and to do so in a manner that preserves the integrity of the records.  Pursuant to this agreement, CBRE agrees to:

**7.7.9.1.**    scan and upload all original paper documents relating to an investigation under the policy into the computer system in a pdf format (or another format that makes the documents non-alterable); and

**7.7.9.2.**    maintain a computerized audit trail sufficient to demonstrate that the integrity of the files has been maintained.

**7.7.10.**    CBRE agrees to include in the personnel files of alleged harassers both: (1) records of any disciplinary and/or remedial actions actually implemented; and (2) records of any disciplinary recommendation which is made for the purpose of effecting an ultimate decision and prepared by a person with knowledge of the investigation and with authority to make such recommendation, even if the recommendation is not ultimately implemented.

**7.7.11.**    CBRE agrees that it will not maintain records related to Sexual Harassment complaints or their investigations in complainants' personnel files (or any similar files pertaining specifically to complainants).

**7.7.12.**    CBRE will also maintain the information necessary to comply with its reporting obligations, as set forth in Section VIII.

**7.8.**    **Policies Designed to Promote Supervisor Accountability**.

**7.8.1.**    CBRE agrees to impose Appropriate Remedial and/or Disciplinary Action -- up to and including termination, suspension without pay, or demotion -- upon any supervisor or manager who is found, at the conclusion of an investigation, to have engaged in Sexual Harassment, to have knowingly tolerated Sexual Harassment of one employee by another

in his or her work area, or to have retaliated against an individual for engaging in protected activity *vis-à-vis* alleged Sexual Harassment. CBRE shall communicate this policy to all of its supervisors and managers.

   **7.8.2.** CBRE agrees to and, to the extent that it already is, agrees to continue to advise all managers and supervisors of their duty to monitor their work areas to ensure employees' compliance with the Harassment-Free Workplace Policy and to report any incidents and/or complaints of Sexual Harassment and/or retaliation (for complaining of alleged Sexual Harassment) of which they become aware consistent with the procedures set forth herein.

   **7.8.3.** CBRE agrees, where applicable, to consider supervisors' and managers' deficiencies in maintaining a harassment-free workplace and/or in responding to harassment complaints in evaluating their performance, and agrees further that the resulting evaluations will have the same consequences for them as normally flow from their evaluations. CBRE agrees to include "commitment to harassment-free workplace" as a criterion for qualification for supervisory positions.

  **7.9.** **Consistency of Policies.** CBRE agrees to ensure the consistency of its Harassment-Free Workplace Policy among all internal publications.

  **7.10.** **Sexual Harassment Training**.

   **7.10.1.** CBRE agrees to provide Company-wide Sexual Harassment training to all employees on two (2) occasions during the period from one year prior to the Effective Date and the end of the two-year term of this Consent Decree.

   **7.10.2.** CBRE agrees to provide Sexual Harassment training to all new employees within one year of their hire or, alternatively, to provide DVD or web-based training in a shorter time period.

**7.10.3.** If the Company-wide training takes place at a new hire's office within one (1) year of hire, the Company-wide training will serve as the new-hire training for that individual.

**7.10.4.** To the extent practicable in a given instance, a senior management official shall introduce Sexual Harassment training.

## VIII. APPOINTMENT OF SPECIAL MASTER AND REPORTING OBLIGATIONS

**8.1. Special Master.** Prior to the Fairness Hearing, the Parties shall select a mutually agreeable independent third-party who is knowledgeable and experienced in Title VII law as the Special Master to administer the Tier Program set forth in Section IX and to serve as the Special Master as set forth in Section VII. The fees and costs of the Special Master will be assumed by CBRE.

**8.2. Content of Reports.** CBRE agrees to submit two fact-based annual reports to the Special Master during the term of the Consent Decree that demonstrate to the satisfaction of the Special Master CBRE's compliance with the terms of the Consent Decree. The Report shall include:

**8.2.1.** for each Sexual Harassment complaint received during the relevant cycle: (a) date of any Sexual Harassment complaint; (b) a factual description of complaint; (c) the office from which the complaint originated; (d) the date the investigation began; (e) the date the investigation closed; (f) whether the complaint was substantiated; (g) the disciplinary and/or remedial action taken, if any; (h) whether any subsequent complaints were reported in that office after the close of the investigation; and (i) for any investigation that lasted longer than 45 days, an explanation of the reasons the investigation was not completed within 45 days.

**8.2.2.**    the schedule of Sexual Harassment training that took place during the preceding reporting cycle; and

**8.2.3.**    in the event CBRE is unable in good faith to provide Sexual Harassment training in compliance with the schedule set forth in this Consent Decree, a detail of the reasons therefor.

**8.3.    Timetable for Reports**.

**8.3.1.**    Provided that the Effective Date of the Consent Decree occurs on or before November 30, 2007, the first annual reporting period shall begin on December 1, 2007, with the annual report covering the next twelve (12) months due on December 31, 2008; and the second annual reporting period shall begin on December 1, 2008, with the annual report covering the next twelve (12) months due on December 31, 2009.

**8.3.2.**    If the Effective Date of the Consent Decree is after November 30, 2007, then the first annual reporting period shall begin on the first day of the month following the Effective Date, with the annual report covering the next twelve (12) months due to the Special Master 90 days after the end of the first annual reporting period; the second annual reporting period shall begin on the first day of the month following the end of the first annual reporting period, with the annual report covering the next twelve (12) months due 90 days after the end of the second reporting period.

**8.3.3.**    The due dates for the annual reports may be extended by written agreement of the Parties and the Special Master.

**8.4.    Special Master's Follow-Up on Reports**.  The Parties further agree that:  (a) CBRE will provide the annual report to the Special Master only, (b) the Special Master will have 45 days to review the annual reports to ensure compliance with this Consent Decree and to

22

identify any issues; (c) within that 45 day period, the Special Master must identify in writing for CBRE any areas in the report which require further attention or otherwise appear to demonstrate non-compliance with this Consent Decree, (d) CBRE will have 30 days thereafter to address and/or correct any areas noted by the Special Master, and (e) if the issues raised by the Special Master are not resolved within this 30-day period, the Special Master will share with Class Counsel any unresolved areas.

     **8.5.** **Class Counsel's Follow-Up on Reports**.  To the extent the Special Master shares unresolved areas or issues of non-compliance (if any) with Class Counsel as provided in Paragraph 8.4, Class Counsel must seek to resolve any disputes arising therefrom according to the procedures set forth in Section XXI.

**IX.** **MONETARY RELIEF**

     **9.1.** **Tier Program**.

          **9.1.1.** **Tier Program Generally**

               **9.1.1.1.**  The Parties have agreed to a tiered claims process ("Tier Program") to which all Settlement Class Members will have access and by which participating Settlement Class Members will adjudicate any individual Eligible Claims for certain monetary relief related to the Litigation.  The Tier Program contemplates that Claimants will elect one of the three procedural tracks or "Tiers" under which their claims will be evaluated.  Each of the three Tiers is subject to an award cap proportional to the degree of process to which each Claimant's claim is subjected.

               **9.1.1.2.**  The Tier Program will be administered by the agreed-upon Special Master who shall use the standards and procedures described hereafter to process and decide the appropriate remuneration, if any, for each Claimant's Eligible Claim.  To the extent

any procedural or administrative issue is not specifically addressed below, the Special Master shall have the discretion to develop such procedures, rules and systems to execute the Tier Program in a way that is consistent with this Agreement and promotes the timely and fair disposition of any claim. In any event or Tier however, the Special Master shall not submit written findings of fact or conclusions of law.

      **9.1.2.** **No Right to Appeal.** Neither any Claimant nor CBRE has the right to appeal any decision by the Special Master in any Tier; the Special Master's decision is final.

      **9.1.3.** **Claimant Tier Election.** Each Settlement Class Member seeking to participate in the Tier Program must complete a Claim Form, *i.e.* either a Tier 1 (Form-T1) or Tier 2 / Tier 3 (Form-T2/3) Claim Form.

      **9.1.3.1.** The Claim Forms will be mailed to each Class Member as attachments to the Notice. This Consent Decree, the Notice and the Claim Forms will also be made available on the home page of the website entitled www.cbrichardellislawsuit.com.

      **9.1.3.2.** All Claim Forms must be sent directly by the Claimants or their agents or representatives to the Claims Administrator and post-marked by the Claim Form Deadline. Within three (3) business days of receipt, or the Effective Date, whichever comes later, the Claims Administrator must forward the Claim Forms to the Special Master. If the Claims Administrator receives any form post-marked after the Claim Form Deadline, s/he shall return the untimely form to the Class Member attached to a standard letter developed by the Special Master explaining that the Claim Form Deadline has passed and that the Class Member is no longer eligible for the Tier Program, unless the Claimant can demonstrate to the satisfaction of the Special Master proof of timely delivery (such as receipt for certified mail) or there was good cause for delay.

9.1.4. **Presentation Of Class-Wide Evidence**.  During the 90-day period after the Effective Date, CBRE and Class Counsel shall provide the Special Master with copies of their respective class certification briefs and exhibits filed in This Case in connection with Plaintiffs' Motion for Class Certification.  The Special Master may, at his/her discretion, request that CBRE and Class Counsel provide a live presentation concerning class-wide allegations of harassment and the defenses thereto (as to both liability and/or damages).  The Special Master will decide the length, forum and format of any live presentation concerning class-wide evidence.  Any class presentations shall be delivered by counsel for CBRE and Class Counsel; no live testimony of any witness, Named Plaintiff or Class Member is allowed.  Class-wide evidence will not be permitted or considered in any form other than as expressly provided in this Consent Decree.  With respect to the evaluation of whether any individual Claimant can meet the relevant Claim Standard, the Special Master shall give whatever credence and weight to the class-wide evidence she deems reasonable and appropriate, provided, however, that the class-wide evidence will not have any presumptive effect.

9.1.5. **Administration Of Tier Program.**  Once the Claim Form Deadline has passed, the Special Master shall begin the Tier Program Administration stage.  The Tier Program will operate along three tracks:  Tier 1, Tier 2, and Tier 3, each described below.

9.1.5.1.    The Special Master has the discretion to conduct/schedule Tier Program proceedings, subject to the rules established herein.  All steps in the Tier Program, however, from individual Tier proceedings to the payment of any Tier Program awards, must be completed within 365 days from the Claim Form Deadline date or within another time agreed upon in writing by the Parties and the Special Master.

**9.1.5.2.** The Tier Program requires the Special Master to (a) verify that each Claimant is a Class Member; (b) analyze each Claimant's claim based on the Claim Standards as defined herein and the materials provided by the Parties as permitted herein; and (c) determine whether, to the Special Master's satisfaction, the Claimant has met the Claim Standard.

**9.1.5.3.** Within 10 days of the Effective Date of the Settlement, for verification that a Claimant is a Class Member, CBRE will provide the Special Master a list of all female employees during the Class Period, and the locations and dates of their first and last, if applicable, dates of employment with CBRE. After the Claim Form Deadline, the Special Master shall compare the Claim Forms to the employee list to confirm that each Claimant is a Class Member. In the event that a Claimant's name does not match the employee list, the Special Master shall request additional information from the Claimant including the Claimant's social security number (if not already provided). The Special Master shall then implement appropriate procedures to compare this additional information with information maintained by CBRE while protecting the applicable confidentiality of the Claimant's claim if submitted in Tier 1.

**9.1.5.4.** Within 10 days of the Effective Date of the Settlement, CBRE will provide the Special Master and Class Counsel a list of all CBRE employees who have executed releases of harassment claims under Title VII, along with copies of each executed release so that the Special Master may confirm that the release covers the Released Claims. Settlement Class Members who have executed releases of the Released Claims are ineligible for the Tier Program.

### 9.1.6.    Tier 1 Claims.

**9.1.6.1.**    A Tier 1 Claimant must complete a Form-T1.  In or with the Form-T1, the Tier 1 Claimant must provide under penalty of perjury:

(a)    Her name, employment dates, office of employment, and a summary of the harassment the Claimant allegedly experienced;

(b)    A statement concerning the approximate dates (or time period) of the alleged harassment demonstrating that the alleged harassment occurred during the Class Period (although the Claimant does not have to specify the name of the harasser or provide specific dates for the underlying incident(s)).

**9.1.6.2.**    The Special Master must accept the allegations of the Tier 1 Claimants as true.  CBRE will not be permitted to rebut the allegations asserted in any Tier 1 claims.

**9.1.6.3.**    The information submitted in the Form T-1s will be kept confidential by the Special Master, including from CBRE.

**9.1.6.4.**    If, based on the allegations in a Tier 1 Claimant's Form T-1 and subject to the limited information required to be provided therein, the Special Master determines that a Tier 1 Claimant meets the Tier 1 Claim Standard, s/he shall award that Tier 1 Claimant the amount of $1,500.

**9.1.6.5.**    If the Special Master determines in her discretion that a Tier 1 Claimant has not met the Tier 1 Claim Standard, she shall not receive a monetary award.

**9.1.6.6.** All Form T-1s shall be reviewed and retained exclusively by the Special Master. Once all Tier 1 claims have been processed, the Special Master shall notify:

        (a)    Class Counsel and the Claims Administrator as to each Tier 1 claimant's award and the total amount allocated for Tier 1;

        (b)    CBRE only as to the aggregate amount of all Tier 1 awards.

**9.1.6.7.** CBRE shall then deposit the total Tier 1 award into an escrow account specified by the Claims Administrator within 30 days of service of notice of the total Tier 1 award from the Special Master or 10 days from the Effective Date of the Decree, whichever comes later.

**9.1.6.8.** Within 30 days of deposit of the total Tier 1 award into the escrow account, the Claims Administrator shall:

        (a)    distribute individual Tier 1 awards to each successful Tier 1 Claimant; and

        (b)    file and serve the appropriate Form 1099s with the Internal Revenue Service and the Claimants.

**9.1.6.9.** Any Tier 1 award that is unclaimed as of the Expiration Date or six months after the Claims Administrator has issued the award to the Claimant, whichever is later, shall be paid to the charitable organization described in Paragraph 10.1 below.

**9.1.7.** **Tier 2 Claims**.

**9.1.7.1.** A Tier 2 Claimant must complete a Form-T2/3, designating that she wishes to proceed in Tier 2. This form identifies the Tier 2 Claimant by name and requires the Tier 2 Claimant to specify under penalty of perjury her Sexual Harassment allegations, including the detail of the hostile work environment which she allegedly

experienced, the identification of any individual who participated in the alleged Sexual Harassment, a detailed description of the alleged sexually harassing conduct, whether the alleged harassing conduct was welcome or unwelcome, a detailed description of how the alleged Sexual Harassment affected her and what injuries she alleges based on the alleged Sexual Harassment, the approximate time period when any alleged incidents occurred, whether each alleged incident was reported (and if so, to whom, how, and when it was reported) and, if not reported, the reasons why not.  In determining whether a Tier 2 Claimant meets the Claim Standard, the Special Master shall treat vague or speculative allegations consistent with EEOC's Policy Guidance.

       **9.1.7.2.**    The Form-T2/3 will include a statement assuring the Claimant that CBRE is prohibited from retaliating against her for participating in the Tier Program.

       **9.1.7.3.**    Within 14 days of the Claim Form Deadline, the Special Master shall collect and submit all Form-T2/3s for the Tier 2 Claimants to CBRE.

       **9.1.7.4.**    Within 90 days of receiving the Tier 2 forms from the Special Master, CBRE shall provide a written response to each Form-T2/3, including information concerning steps taken to respond to the alleged harassment, if it was reported or known to CBRE.  CBRE's response (including any position statement) shall be limited to 15 pages with writing and/or typing on only one side of each page, unless otherwise authorized by the Special Master.

       **9.1.7.5.**    The Special Master shall then determine whether each Tier 2 Claimant meets the Claim Standard.  If the Special Master is unable to determine, based on the submissions described in Paragraphs 9.1.7.1 and 9.1.7.4, whether a Tier 2 Claimant meets the

29

Claim Standard, then the Special Master may make one request for additional information of Claimant and/or one request for additional information of CBRE for the purpose of enabling her to make such determination.

**9.1.7.6.**     If the Special Master determines that a Tier 2 Claimant meets the Claim Standard, the Special Master shall consider the damages available to litigants under Title VII and 42 USCS § 1981a and determine the appropriate monetary award, if any, for such Claimant within a range of $0 to $15,000.00.  In the event the Special Master determines that the Claimant does not satisfy the Claim Standard, the Claimant shall be awarded no money.

**9.1.7.7.**     The Special Master shall make quarterly reports to Class Counsel, the Claims Administrator and CBRE concerning the Tier 2 awards for the preceding quarter.

**9.1.7.8.**     Within 60 days of each quarterly award report or 10 days from the Effective Date of the agreement, whichever comes later, CBRE shall deposit the total of the Tier 2 awards into the escrow account designated by the Claims Administrator.

**9.1.7.9.**     Within 30 days of deposit, the Claims Administrator shall tender to each successful Tier 2 Claimant her award check and file and serve the appropriate Form 1099 with the Internal Revenue Service and the Tier 2 Claimants.

**9.1.7.10.**     Any Tier 2 award that is unclaimed as of the Expiration Date or six months after the Claims Administrator has issued the award to the Claimant, whichever is later, shall be paid to the charitable organization described in Paragraph 10.1 below.

**9.1.8.     Tier 3 Claims.**

**9.1.8.1.**     A Tier 3 Claimant must complete a Form-T2/3, designating that she wishes to proceed in Tier 3.  This form identifies the Tier 3 Claimant by name and

requires the Tier 3 Claimant to specify under penalty of perjury her Sexual Harassment allegations, including the detail of the hostile work environment which she allegedly experienced, the identification of any individual who participated in the alleged Sexual Harassment, a detailed description of the alleged sexually harassing conduct, whether the alleged sexually harassing conduct was welcome or unwelcome, a detailed description of how the alleged Sexual Harassment affected her and what injuries she alleges based on the alleged Sexual Harassment, the approximate time period when any alleged incidents occurred, whether each alleged incident was reported (and if so, to whom, how, and when it was reported) and, if not reported, the reasons why not. A Tier 3 Claimant's written submission shall be limited to 15 pages with writing and/or typing on only one side of each page; however, a Tier 3 Claimant may submit as exhibits pre-existing documents (*i.e.*, documents that were not created for purposes of submitting her Tier 3 Claim) that provide some or all of the basis for her Claim, including, by way of example only, inappropriate e-mails circulated in the workplace, photographs of inappropriate conduct in her office, *etc.*

**9.1.8.2.** The Form-T2/3 includes a statement assuring the Claimant that CBRE is prohibited from retaliating against her for participating in the Tier Program.

**9.1.8.3.** In determining whether a Tier 3 Claimant meets the Claims Standard, the Special Master is entitled to follow up and ask the Claimant to be more specific. If the Claimant is not able to provide more specifics to the satisfaction of the Special Master, the Special Master may take that into account when adjudicating the claim.

**9.1.8.4.** Within 14 days of the Claim Form Deadline, the Special Master shall provide copies of all Forms-T2/3 for the Tier 3 Claimants to CBRE.

31

**9.1.8.5.** Within 90 days of receiving each Tier 3 form from the Special Master, CBRE shall provide a response and/or position statement to the allegations in the Form-T2/3, including information concerning steps taken to respond to the alleged harassment, if it was reported or otherwise known by CBRE, additional areas of inquiry it believes are needed, and the names of persons it believes are necessary for resolving the claim, as well as any rebuttal to class-wide evidence cited by any individual claimant. CBRE's written response (including any position statement) shall be limited to 15 pages with writing and/or typing on only one side of each page. CBRE shall return its response to the Special Master; however, CBRE may submit as exhibits pre-existing documents (*i.e.*, documents that were not created for purposes of its response to the Tier 3 Claim) that provide some or all of the basis for its defense, including, by way of example only, an executed release by the Claimant.

**9.1.8.6.** Within 30 days of receipt, the Special Master shall provide copies of CBRE's response and position statement to each Tier 3 Claimant together with a standard cover letter prepared by the Special Master setting forth the rights that the Claimant has to respond as follows: Each Tier 3 Claimant shall have 60 days to prepare, if she so chooses, any rebuttal to the issues raised in CBRE's response or position statement, including but not limited to the identification of any additional areas of inquiry and the names of persons necessary for resolving the claim.

**9.1.8.7.** Within 90 days after the deadline for the rebuttal statement, the Special Master may, at his/her discretion, conduct additional investigation into a given Tier 3 Claimant's claims. The Special Master's investigation can include a request for additional documentation or written response to specific questions from CBRE or the Claimant. Neither CBRE nor the Claimant may object to the additional investigation, unless compliance with the

32

request would cost the responding party more than $5,000 (exclusive of attorneys' fees) to address. However, in the event that CBRE or the Claimant refuses to cooperate or provide the additional information requested from the Special Master, the Special Master may make an adverse inference regarding the requested information against that party.

> **9.1.8.8.** Once the Special Master has conducted any additional investigation, s/he shall schedule a Tier 3 Hearing.

> **9.1.8.9.** Tier 3 Hearings shall be conducted in Chicago, Illinois at dates and times scheduled by the Special Master. The Special Master has the discretion to reschedule Tier 3 Hearings at the Claimant's or CBRE's request. The Special Master shall decide the venue of the hearings.

> **9.1.8.10.** Tier 3 Hearings will be directed and conducted at the discretion of the Special Master, subject to the following guidelines:

>> (a) Both CBRE and the Claimant (except for the Named Plaintiffs and CBRE with respect to the Named Plaintiffs' claims only) shall have an opportunity to provide an oral presentation if they choose, including but not limited to a review of any alleged facts or documents;

>> (b) Tier 3 Claimants who live more than 100 miles from the hearing venue may attend telephonically or, after being duly sworn, provide testimony telephonically. Alternatively, CBRE has the right to require a Tier 3 Claimant to testify in person (unless the Claimant can demonstrate to the Special Master extraordinary circumstances precluding her in-person attendance) provided that it

33

pays the Claimant's reasonable transportation and lodging expenses;

(c)    Each side may, at her or its option and subject only to the Special Master's discretion, identify one or more witnesses, including but not limited to CBRE employees, who have personal knowledge of the facts or circumstances alleged in or related to the Claim to testify;

(d)    The Special Master has the discretion, informed by the written materials, to identify and request additional individuals, including CBRE employees and third-party witnesses that are in the control of the Claimant or CBRE, to attend the hearing and testify (and, in the event said witnesses are not produced, may draw reasonable inferences therefrom, taking into account all relevant circumstances including cost);

(e)    Subject to the discretion of the Special Master, the Special Master may ask questions of the witnesses, and may provide CBRE and the Claimant the opportunity to present and cross-examine the witnesses attending the hearing pursuant to the guidelines above;

(f)    A Tier 3 Hearing shall be completed in one, eight-hour day (exclusive of breaks), but the Special Master may extend this limit and may conclude the hearing at any time in less than eight hours, both either in his or her sole discretion and/or upon the request of either CBRE or the Claimant;

(g)    The Special Master has discretion as to how each Tier 3 Hearing will be conducted, including the order of witnesses, time limits for the presentation of CBRE's and the Claimant's cases, and rules of evidence that apply, subject to the rule that CBRE and the Claimant shall be allocated equal amounts of time of that ultimately permitted for the hearing.

**9.1.8.11.**    The Special Master shall then determine whether each Tier 3 Claimant meets the Claim Standard.

**9.1.8.12.**    If the Special Master determines that a Tier 3 Claimant meets the Claim Standard, the Special Master shall consider the damages available to litigants under Title VII and 42 USCS § 1981a and determine the appropriate monetary award, if any, for such Claimant within a range of $0 to $150,000.  In the event the Special Master determines that the Claimant does not satisfy the Claim Standard, the Claimant shall be awarded no money.

**9.1.8.13.**    The Special Master shall make quarterly reports to Class Counsel, the Claims Administrator and CBRE concerning the Tier 3 awards for the preceding quarter.

**9.1.8.14.**    Within 60 days of each quarterly award report or 10 days from the Effective Date of the Agreement, whichever comes later, CBRE shall deposit the total of the Tier 3 awards into the escrow account established by the Claims Administrator.

**9.1.8.15.**    Within 30 days of deposit, the Claims Administrator shall tender to each successful Tier 3 Claimant her award check and file and serve the appropriate Form 1099 with the Internal Revenue Service and the Tier 3 Claimants.

**9.1.8.16.**   Any Tier 3 award that is unclaimed as of the Expiration Date or six months after the Claims Administrator has issued the award to the Claimant, whichever is later, shall be paid to the charitable organization described in Paragraph 10.1 below.

**9.1.9.**   **Return/Destruction Of Tier Program Materials.**  At the conclusion of the Tier Program, the Special Master shall return all materials submitted during the Program to the producing party or (with that party's agreement) shall destroy those materials.

**9.1.10.**   **The Named Plaintiffs' Participation in The Tier Program.**   The Named Plaintiffs may participate in the Tier Program to the same extent as any Class Member, except as to the scope of the evidence the Named Plaintiffs are allowed to present if they elect to participate in the Tier Program, as set forth in Paragraph 9.1.8.10(a).  Specifically, if any of the Named Plaintiffs participate in the Tier Program, the Parties agree that:

**9.1.10.1.**   the evidence CBRE and the Named Plaintiff may submit in support of or in opposition to a Tier 3 claim will be limited to the documentary evidence already developed in This Case (including, but not limited to, depositions, declarations, other summary judgment brief materials, and summary judgment briefs);

**9.1.10.2.**   for any Named Plaintiff who elects to submit a Tier 3 Claim, the Special Master will not conduct a Tier 3 hearing.

**9.1.11.**   **No Entitlement to Attorneys' Fees or Costs in Connection with Tier Program.**  Nothing in this Section (or this Consent Decree) shall permit individual Claimants or their attorneys, including but not limited to Class Counsel, to seek or recover from CBRE attorneys' fees or other costs associated with representing an individual Claimant with respect to the Tier Program.  CBRE shall not be obligated to compensate individual Claimants or their attorneys for any such fees or costs.

X.      CHARITABLE CONTRIBUTION

    10.1.    **Charitable Contribution**.

        10.1.1.    CBRE agrees to make a contribution of $400,000, within 60 days of the Effective Date of this agreement, to the Commercial Real Estate Women (CREW) Network, an industry advocate for the success of women in commercial real estate, for the establishment and administration of a scholarship fund pursuant to the Women Scholars' Program described in Exhibit G. The purpose of the program is to provide annual scholarships over the next four years to junior and/or senior female undergraduate students concentrating their field of study in the real estate area in order to promote the entry and advancement of women in the real estate services industry.

XI.      RELEASE AND COVENANT NOT TO SUE

    11.1.    In consideration of the promises contained in, and the benefits provided or to be provided hereunder, upon the Effective Date this Consent Decree shall resolve, extinguish, and finally forever bar any and all Released Claims which any of the Named Plaintiffs, or their respective representatives, agents, heirs, executors, administrators, successors, or assigns have, may have, may have had, or in the future may have against CBRE arising from or related to events that occurred during the Liability Period.

    11.2.    Except with respect to any persons who have effectively exercised a right to opt out of this Decree (which is permissible as to claims for monetary relief only), in consideration of the promises contained in, and the benefits, processes and procedures provided or to be provided to the Settlement Class Members hereunder, upon the Effective Date this Consent Decree shall resolve, extinguish, and finally and forever bar any and all Released Claims for monetary relief or for equitable relief which any of the Settlement Class Members, or their

37

representatives, agents, heirs, executors, administrators, successors, or assigns have, may have, may have had, or in the future may have against CBRE arising from or related to events that occurred during the Liability Period. As used in this Section, the phrase "monetary relief" shall include economic or non-economic monetary damages of any kind arising from the Released Claims, including, without limitation, back pay, employment benefits (including, without limitation, retirement, life insurance, and 401(k) savings plan benefits, and the monetary equivalent of various forms of leave), and/or interest (including both pre-judgment interest and post-judgment interest), compensatory damages and punitive damages. Upon the Effective Date, to the extent permitted by law, the doctrines of res judicata and collateral estoppel shall bind all Settlement Class Members with respect to the Released Claims (and shall also bar all Class Members with respect to claims for equitable relief released hereunder). The Consent Decree may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or party which arises out of the Released Claims and any other claims released and discharged by the Consent Decree (*i.e.*, the claims for equitable relief released as to all Class Members).

**11.3. Covenant Not to Sue**. In consideration of the promises contained in this Consent Decree and the benefits, processes and procedures provided or to be provided hereunder, the Settlement Class Members also agree never to sue Defendant in any forum for any of the Released Claims. They additionally agree that any such claim, if filed by any one or more of them, shall be dismissed with prejudice. Excluded from this covenant not to sue are any claims that cannot be waived by law.

## XII.    GENERAL PROVISIONS

**12.1.    No Admission Of Liability**.  This Consent Decree does not and is not intended to constitute and shall not be deemed to constitute an admission by CBRE as to the merits, validity, or accuracy of any of the allegations, claims, or defenses in the Litigation, nor shall it be used as a means to require the continuation of any program or action beyond the term of this Consent Decree, except as may be necessary to enforce the terms of this Consent Decree.  By entering into this Consent Decree, CBRE does not admit or concede, expressly or impliedly, but instead denies, that it has in any way violated Title VII, the common law of any jurisdiction, any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity.

**12.2.    No Court Findings As to Liability.**  In agreeing to the terms of this Consent Decree, the Parties acknowledge that this Court has not made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in the Litigation.

**12.3.    Not Admissible In Any Other Proceeding**.

**12.3.1.**   The Parties shall not introduce or use or cause to be introduced or used anything in this Consent Decree, nor any action taken in implementation thereof, nor any statements, discussions, or communications, nor any materials prepared, exchanged, issued, or used during the course of the Litigation or in negotiations leading to this Consent Decree, in this Litigation or in any other judicial, arbitral, administrative, investigative, or other proceeding of whatsoever kind or nature, as evidence of Sexual Harassment, or as evidence of any violation of Title VII; the common law of any jurisdiction; any federal, state, or local law, statute, ordinance, regulation, rule, or executive order; or any obligation or duty at law or in equity.

39

**12.3.2.**  Notwithstanding the foregoing, the Consent Decree may be used by the Plaintiff Class or CBRE in any proceeding in this Court to enforce or implement the Consent Decree or any orders or judgments of this Court entered into in connection herewith.

**12.3.3.   Effect Of Failure Of Consent Decree**.  In the event this Consent Decree does not become final or effective (for whatever reason), this entire Consent Decree shall become null and void and of no force or effect at the option of Class Counsel, on behalf of the Named Plaintiffs or the Class, or CBRE.  The Parties further agree that the Litigation shall be reinstated if CBRE exercises its option to void the Consent Decree pursuant to any of the conditions enumerated in Section XX below.

**12.4.   Responsibility of Settlement Class Members and Named Plaintiffs for Tax Liabilities.**

**12.4.1.**  Each Settlement Class Member and Named Plaintiff who receives a payment from CBRE in connection with this Consent Decree and the procedures/payments provided for herein shall be fully and ultimately responsible for payment of any and all federal, state or local taxes (excluding the employer share of employment taxes, if any, and unemployment taxes and excluding amounts properly withheld from the payment, if any) resulting from or attributable to the payment received by such Settlement Class Member or Named Plaintiff.

**12.4.2.**  Further, each Settlement Class Member and Named Plaintiff shall indemnify and hold harmless CBRE, Class Counsel, the Depository Bank, and the Settlement Administrator from any tax liability, including penalties and interests and costs of any proceedings, related in any way to any acts or omissions on the part of the Settlement Class Member or Named Plaintiff.

      **12.4.3.**  In all cases in which the tax liability that arises is not attributable to any acts or omissions on the part of a Settlement Class Member or Named Plaintiff, the Settlement Class Member or Named Plaintiff shall indemnify and hold harmless CBRE, Class Counsel, the Depository Bank, and the Settlement Administrator from any tax liability, but not penalties, interest, or the costs of any proceedings related to such tax liability.

## XIII.   INCENTIVE AWARDS TO NAMED PLAINTIFFS.

      **13.1.**  CBRE agrees to pay the Named Plaintiffs an aggregate award of $350,000 for the services they provided to the Class, and the risks they assumed on behalf of the Class.

      **13.2.**  Subject to the Court's approval, the Parties have valued the services provided and the risks undertaken by each of the Named Plaintiffs by taking into account the following factors:

      (a)  the length of each of their tenures as Named Plaintiffs in the litigation and the concomitant obligations as a result thereof;

      (b)  the service of all Named Plaintiffs in the strategic components of the litigation, in which they gave direction to, and regularly consulted with, Class Counsel about the case strategy and direction and later about litigation plans and settlement issues; and

      (c)  assistance by each of the Named Plaintiffs in designing and undertaking discovery and responding to discovery undertaken by CBRE, as well as submitting to depositions and providing declarations.

      **13.3.**  Subject to the Court's approval, the allocation of the Service Award, based on the recommendation of Class Counsel and the Named Plaintiffs, shall be as follows:

| | |
|---|---|
| Amy Wiginton | $125,000 |
| Kristine Moran | $100,000 |
| Andrea Corey | $75,000 |
| Norma Plank Fethler, as successor in interest to Dondi Plank | $25,000 |
| Olivia Knapp | $25,000 |

**13.4.**  CBRE will tender separate checks to Class Counsel for delivery to each Named Plaintiff in the respective amounts, within 30 days of the Effective Date of the agreement, after which CBRE shall file a Form 1099 in that amount for each Named Plaintiff.

## XIV.    ATTORNEYS' FEES AND COSTS

**14.1.**  Upon final approval of this Decree, CBRE shall establish an interest-bearing escrow account at Charter One Bank in Chicago, Illinois into which it shall deposit the sum of Three Million Four Hundred Thousand Dollars ($3,400,000.00), as payment to Class Counsel for all fees and litigation costs and expenses they incurred on behalf of Plaintiffs and the Class up to and including the date this Consent Decree obtains final approval by the Court.  Such funds, including accrued interest, will be released and made payable to Class Counsel on the Effective Date of the Decree.

**14.2.**  CBRE shall not be responsible for the payment of any other attorneys' fees and expenses incurred by Class Counsel, the Named Plaintiffs or the Class, except as follows:

> (a)    the Special Master's fees for administering the Tier Program and monitoring compliance with the Consent Decree as described herein;

(b)     the travel and lodging expenses for live testimony of Tier Program claimants, described in Paragraph 11.1.8.11, above;

(c)     demonstrable fees incurred by Class Counsel in jointly working with CBRE to respond to an appeal from the final order approving the Consent Decree, but only in the following limited categories: (1) reviewing and commenting on CBRE's brief, (2) preparation of portions of an appellate brief which raises arguments that CBRE has refused to make after having been advised to do so by Class Counsel, but only if the arguments asserted by Class Counsel ultimately constitute one of the bases relied on by the Court of Appeals for upholding the consent decree, and (3) necessary preparation for and attendance of up to two attorneys at hearings related to the appeal;

(d)     demonstrable fees up to $20,000, incurred by Class Counsel for necessary preparation for and attendance of up to two attorneys at any class-wide oral argument requested by the Special Master pursuant to Paragraph 11.1.4, with the understanding that class-wide evidence is otherwise limited to the class briefs and exhibits already submitted to the Court in connection with Plaintiffs' motion for class certification and that CBRE will not pay fees incurred in the preparation of any additional written materials;

       (e)    any fees and expenses incurred by Class Counsel where Class Counsel represents the prevailing party in the enforcement of this Decree as set forth and limited by Section XXI;

       (f)    any fees owed by CBRE under sub-paragraphs (c) and (d) shall be limited to and shall under no circumstances exceed $100,000;

       (g)    the costs and expenses for administering the employment practices in Section VII of the Decree shall be paid by CBRE.

Notwithstanding the foregoing, this section in no way limits the right of Class Counsel to do additional work not enumerated above; this section is only intended to reflect the limitations on CBRE's payments to Class Counsel for future work.

    **14.3.**   The Parties acknowledge that neither Class Counsel, the Named Plaintiffs nor CBRE is responsible for any fees and costs associated with a Claimant's participation in the Tier Program described in Section IX above. CBRE will not compensate Class Counsel for any fees or costs incurred in assisting any individual Class Members, including, but not limited to, responding to Class Member inquiries regarding the Settlement and/or performing ancillary tasks related to Class Members' access to the Tier Program.

    **14.4.**   CBRE shall have no obligation under this Consent Decree to pay any money for attorneys' fees and costs to Class Counsel, except as expressly set forth herein. Except as otherwise provided herein, CBRE shall not be liable for any of the Named Plaintiffs' costs or attorneys' fees, statutory or otherwise, incurred in the Litigation or during the term of the Consent Decree.

    **14.5.**   The costs and expenses for administering the employment practices in Section IX of the Agreement shall be paid by CBRE.

## XV.    PRELIMINARY APPROVAL HEARING

**15.1.**    Subject to approval by the Court, the Parties hereby agree to the following procedures and schedule for Notice and submission of this Consent Decree for final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

**15.2.**    The Court shall conduct a Preliminary Approval Hearing on October 4, 2007 at 1:30p.m. to determine whether the Court should approve the compromise of the Litigation in the manner set forth herein.

**15.3.**    The Parties agree that they shall jointly file this Consent Decree with the Court seeking entry of an Order in the form attached hereto and fully incorporated herein at Exhibit A.

**15.4.**    At the Preliminary Approval Hearing, the Parties agree to opine to the Court that the Consent Decree is fair, reasonable, and adequate to the Class as a whole, within the meaning of that phrase as contemplated by Rule 23(e) of the Federal Rules of Civil Procedure.  Counsel of Record shall request prompt judicial approval of this Consent Decree as written and agree further to use their best efforts on a joint basis to obtain prompt entry of the Order.  The Parties, through their respective counsel, also agree to recommend to the Court on a joint basis that, in their respective professional opinions, the Consent Decree is reasonable and appropriate, in the best interests of the Class, that the Parties have bargained for the terms in the Consent Decree, and that no section or subsection of this Consent Decree should be modified or stricken.  If the Court does not execute the Order in the form attached and fully incorporated herein at Exhibit D in any material part, the Parties agree that this Consent Decree shall be null and void.  If this Consent Decree is terminated or fails to become effective for any reason, the Court's establishment of a provisional settlement process shall be void, and the respective rights of the Parties in This Case

or in any other case shall not be prejudiced in any way by the Consent Decree or the Court's refusal to enter an Order approving the Consent Decree.

## XVI.    NOTICE

**16.1.**    The Parties have agreed to retain Rust Consulting, an independent Claims Administrator, to be paid by CBRE, to administer and implement the plan set forth herein to distribute monetary awards to Claimants, including the following powers:

        (a)   to distribute Notice to Class Members, including by U.S. mail to their last known addresses;

        (b)   to conduct a trace on Class Members whose Claim Forms are returned as undeliverable, identify current addresses for those Class Members and distribute Notice to those Class Members by U.S. Mail;

        (c)   to receive and forward to the Court and Counsel of Record any Requests for Exclusion;

        (d)   to forward Claim Forms to the Special Master; and

        (e)   to distribute monetary awards to Claimants and file and serve the appropriate Form 1099s.

**16.2.**    Within fourteen (14) days after the entry of the Preliminary Approval Order, CBRE shall provide to Class Counsel and the Claims Administrator the names and last known addresses of Class Members.

**16.3.**    Within thirty (30) days after receipt of the list, the Claims Administrator shall issue Notice to the last-known address of each Class Member by first-class mail postage prepaid.

**16.4.**    Upon receipt of any Notices returned to the Claims Administrator because the Class Member no longer resides at the last known address provided by CBRE, the Claims Administrator shall run a trace on the Class Member (at a cost to CBRE of $1 per trace); if an updated address is located, the Claims Administrator shall mail a new notice to the Class Member.  In the event that the trace program, which will be based on last known names and addresses of Class Members, results in more than five percent (5%) of Claim Forms being returned as undeliverable, CBRE and Class Counsel will meet and confer regarding the appropriate methods by which to trace Class Members, including the use of social security numbers (under a Court-ordered Protective Order) for tracing purposes, and implement an additional round of mailing Notice.

## XVII.    OPT-OUTS

**17.1.**    Any Class Member may request exclusion from the Class ("Opt-Out") only for purposes of recovering individual monetary relief as described in Section IX (*i.e.*, through participation in the Tier Program).

**17.2.**    No Class Member may opt out of the equitable relief provisions in Section VII of this Consent Decree.

**17.3.**    Class Members who wish to opt-out of the individual monetary relief portion of the settlement will be required to file a completed and signed Request for Exclusion with the Court.

**17.4.**    To opt-out of the Settlement, the Class Member will be required to submit a form signed personally by the Class Member or her attorney or other representative (unless otherwise authorized by law or approved in advance by the Court) containing her full name, address, day and evening telephone numbers, Social Security number and the following statement:

"I am a Settlement Class Member in the lawsuit of Wiginton v. CB Richard Ellis, Inc. Case No. 02 CV 6832. I wish to opt-out of the monetary portion of the settlement of This Case. I understand that by requesting to be excluded from the monetary portion of the Settlement, I will receive no money whatsoever from CB Richard Ellis, Inc. under the Settlement entered into by Defendant and Class Members and preliminarily approved by the Court as fair and reasonable on October 4, 2007. I understand that I may bring a separate lawsuit, in which I will not be represented by Class Counsel, and I understand that in any separate lawsuit I may receive nothing, or, I may receive less than I would have if I had filed a claim under the Tier Program.  I also understand that I cannot seek exclusion from the Class for purposes of non-monetary relief, and I will be bound by the class-wide equitable relief provisions of the Settlement entered into by Defendant and Class if the Court gives final approval to the Settlement."

**17.5.**    Requests for Exclusion will be made available to Class Members upon request to the Claims Administrator by calling (888) 764-8860 or writing to the following address: Wiginton, et al. v. CB Richard Ellis, Inc., Claims Administrator, c/o Rust Consulting, Inc., P.O. Box 9388, Minneapolis, MN 55440-9388.

**17.6.**    Those who choose to opt-out of this lawsuit (a) will have no right to file a claim for or to receive any money under the settlement of This Case; and (b) may bring a separate lawsuit against CBRE.

**17.7.**    Requests for Exclusion must be mailed to the Claims Administrator and postmarked by January 2, 2008.  The Settlement Administrator must, in turn, forward completed Requests for Exclusion to Counsel of Record.

## XVIII.    OBJECTIONS/COMMENTS TO SETTLEMENT

**18.1.**    Any Class Member has the right to submit written objections to or comments in support of the proposed Settlement, the proposed award of attorneys' fees and expenses, or the proposed payment of service awards to the Representative Plaintiffs.

**18.2.**    To do so, the Class Member must submit a written statement setting forth: (1) her name, address, and telephone number; (2) the reference "Wiginton v. CB Richard Ellis, Inc., No.

02 C 6832"; (3) the approximate dates and location of employment with CBRE; and (4) her objections, comments and any supporting arguments, to: Clerk of the Court, Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604.

18.3.   The Class Member must also mail copies of her entire written submission to Plaintiffs' Co-Lead Counsel and CBRE's counsel at the addresses listed in Paragraph 22.9, below.

18.4.   To be considered by the Court, any objections or supporting comments must be actually received by the Clerk of the Court, Plaintiffs' Co-Lead Counsel, and CBRE's counsel, and not merely postmarked, no later than January 2, 2008.

18.5.   Only Class Members who remain in the Class may make an objection.  Class Members who opt-out may not object to the proposed Settlement.

18.6.   Any Class Member may also attend the Fairness Hearing, either personally or through an attorney retained by her, at her own expense, and ask to be heard by the Court on her objections or comments. To be heard however, the Class Member must submit her objections or comments in writing in compliance with this Section and include in her objections or comments a statement that she intends to appear and requests to be heard at the Fairness Hearing.

XIX.   FAIRNESS HEARING

19.1.   Class Counsel shall file the date-stamped originals for any Request for Exclusion forms with the Court not later than two (2) days before the date set for the Fairness Hearing, at which the Consent Decree shall be presented to the Court for final approval.

19.2.   Class Members who have timely requested exclusion from the Class may not participate at the Fairness Hearing.

19.3.   Settlement Class Members who wish to object to this Consent Decree or any part of it may be heard at the Fairness Hearing only:

(a)   if they file with this Court and serve on Counsel of Record a written statement of their objections and the basis for such objections;

(b)   where such statement is received by the Court and Counsel of Record at least ten (10) days prior to the date set for the final approval hearing; and

(c)   where such statement indicates whether they intend to appear at the Fairness Hearing.

Such objectors must appear at the Fairness Hearing either in person or by counsel.  Failure to perform any of these requirements shall be deemed a waiver of any objections.  The Parties may, but need not, respond in writing to objections by filing a response with the Court.

## XX.   EXCESSIVE NUMBER OF OPT-OUTS

20.1.   CBRE shall have the unilateral right to revoke the Consent Decree prior to the Effective Date in the event that ten percent (10%) or more of Class Members opt-out of the Consent Decree.

## XXI.   ENFORCEMENT PROCEDURE

21.1.   **Resolution Of Parties' Disputes.**  In the event that Class Counsel or any Party to this Consent Decree believes that a Party has failed to comply with any material provision of this Consent Decree, he, she, or it shall first attempt to resolve the issue by good faith negotiations.

21.1.1.   To that end, he, she, or it shall immediately, and no later than ten (10) business days after becoming aware of the issue, notify the other party in writing via e-mail and

first class mail of the particulars of the dispute and the term or terms of the Consent Decree that are involved.

**21.1.2.** The recipient of the written communication must respond in writing to the sender within ten (10) business days with an explanation of its position.

**21.1.3.** If such correspondence does not resolve the dispute between the Parties, then the Parties shall meet in person or, if necessary, by telephone through representatives authorized to resolve the dispute on at least one (1) occasion within the next ten (10) business days and attempt to resolve the dispute in good faith.

**21.2. Court Intervention.** After complying with Paragraph 21.1, above, if the Parties are unable to resolve their dispute, then the Parties may seek Court intervention. The moving papers shall explain the facts and circumstances that allegedly necessitate immediate action by the Court. If any such matter is brought before the Court requesting immediate Court action, the opposing party shall be provided with appropriate actual notice, and an opportunity to be heard in opposition to the motion, pursuant to the Local Rules of the Court and the Federal Rules of Civil Procedure. The Court in its discretion may set such procedures for emergency consideration as are appropriate to the particular facts and circumstances, but no such matter may be conducted on an *ex parte* basis.

**21.3. Fees Incurred to Enforce the Decree.** The Parties will bear their own fees and costs in connection with any and all actions taken to enforce this Decree in the District Court, except that if Class Counsel represents the prevailing party in any such proceeding, they shall be entitled to recover their reasonable fees and costs for all work reasonably necessary to enforce the provisions of this Decree through the presentation of disputed issues for decision by the Court. Compensable time and expenses hereunder shall not include any work involved in

investigating the alleged non-compliance, in providing notice of the alleged non-compliance, or in seeking to resolve the dispute pursuant to Paragraph 16.1 above.

21.4. **No Third-Party Rights.** Nothing in this Consent Decree shall be deemed to create any rights on the part of any third party beneficiaries to enforce this Consent Decree. The right to seek enforcement of this Consent Decree is vested exclusively in the Parties. In the event that a third party challenges this Consent Decree or brings a lawsuit or files an administrative charge with a governmental agency, such as the U.S. Equal Employment Opportunity Commission or a similar state or local agency, against CBRE for liability resulting from any actions required by this Consent Decree, Class Counsel agrees that it will not intervene to challenge the Consent Decree (or otherwise take any affirmative steps to challenge or undermine the Consent Decree directly or indirectly).

21.5. **Status of Allegedly Injured Individuals.** For purposes of interpreting this Consent Decree, allegedly injured individuals who are not Class Members shall not be deemed to be third-party beneficiaries of this Consent Decree and shall have no right to enforce its terms.

21.6. **No Individual or Independent Right to Seek Enforcement.** Nothing in this Consent Decree is intended to confer upon any person or entity other than the Plaintiff Class, as a whole and by Class Counsel, and CBRE the right to seek enforcement of its terms.

## XXII. CONSTRUCTION

22.1. **Governing Law.** This Consent Decree shall be construed and interpreted in accordance with and governed by the laws of the State of Illinois.

22.2. **Entire Agreement.** This Consent Decree, including Exhibits, comprises the full and exclusive agreement and understanding of the Parties with respect to this settlement, and supersedes all prior written or oral agreements (including, without limitation, any and all term

sheets previously agreed to by the Parties). No representations or inducements to compromise this action have been made, other than those recited in this Decree. This Decree does not impose any obligations on the parties beyond the terms and conditions stated herein. Accordingly, this Decree shall not prevent or preclude CBRE from revising its employment practices and policies or taking other personnel actions during the term of the Decree that do not violate the requirements of the Decree. Rather, subject to the terms of this Consent Decree, CBRE retains all managerial discretion over personnel decisions and actions, terms and conditions of employment, and human resources functions, programs, policies, practices, and procedures, in accordance with applicable law.

22.3. **Severability.** Subject to and independent from Paragraph 4.6 herein, if any clause, sentence, paragraph, or part of this Consent Decree or the application of it to any person or circumstances, is, for any reason, judged by the Court to be totally or partially unenforceable or contrary to law or if the enactment or amendment of any federal or state statute, order, ordinance, regulation renders any provision of this Consent Decree totally or partially unenforceable or contrary to law, such ruling, judgment, enactment, or amendment shall not effect, impair, or invalidate the remainder of this Consent Decree, except as otherwise provided herein.

22.4. **Joint Document Of The Parties.** The terms of this Consent Decree are the product of joint negotiation and are not to be construed as having been authored by one Party or another.

22.5. **Agreed Modifications.** Should either the Named Plaintiffs or CBRE determine that modifications, additions, or deletions to this Consent Decree are necessary, the counsel for the Parties shall meet in good faith and on reasonable notice to discuss any such changes. No

modification, deletion, or addition to this Consent Decree shall be adopted unless it is agreed upon in writing, signed by the Parties, and so ordered by the Court.

22.6.   **Headings.**   The headings in this Consent Decree are for the convenience of the Parties only and shall not limit, expand, modify, amplify, or aid in the interpretation or construction of this Consent Decree.

22.7.   **Non-Waiver.**   The waiver in any one instance by any Party hereto of any term, condition, or covenant in this Consent Decree or of the breach of any term, condition, covenant, or representation herein shall not operate as or be deemed to be a waiver of the right to enforce any other term, condition, or representation, nor shall any failure by any Party at any time to enforce or require performance of any provision hereof operate as a waiver of or affect in any manner such Party's right at a later time to enforce or require performance of such provisions or of any other provision hereof.

22.8.   **Calculation Of Time.**   In computing any period of time prescribed or allowed by this Consent Decree, unless otherwise stated, such computation or calculation shall be made consistent with the Federal Rules of Civil Procedure.

22.9.   **Notice To The Parties.**   All notices and other communications required under this Consent Decree shall be in writing and delivered either personally or by depositing the same, postage prepaid, in the United States Mail, addressed to the party hereto to whom the same is directed at the following addresses:

**To Plaintiffs:**

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd., Suite B
Oak Park, IL 60301
beth@hbsslaw.com

Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
kaw@wtwlaw.com
jfc@wtwlaw.com
amn@wtwlaw.com

**To CBRE:**

Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603
(312) 460-5000
(312) 460-7000 (facsimile)
bfeis@seyfarth.com
cdegroff@seyfarth.com
aduprey@seyfarth.com

The Parties or their counsel may from time to time change their addresses or representatives for purposes of this Section by providing written notice, return receipt requested, of such changes to the other Party.

**22.10. Counterparts.** This Consent Decree may be executed in one or more counterparts and each executed copy shall be deemed an original, which shall be binding upon all Parties hereto.

## XXIII. STATEMENTS TO THE MEDIA OR GENERAL PUBLIC

**23.1. Publicity.** CBRE, Class Counsel, and the Named Plaintiffs shall agree to a media statement ("Public Statement"), attached hereto as Exhibit F, to be issued jointly on the day after the Court's preliminary approval of the settlement. Furthermore, CBRE, Class Counsel, and the Named Plaintiffs agree that all communications with the media and other non-parties to This Case regarding This Case shall be limited to the Public Statement. CBRE, Class Counsel, and the Named Plaintiffs agree that they will not engage in any unauthorized publicity regarding This Case and that neither Class Counsel nor Named Plaintiffs, nor any of their agents, will take any

steps to encourage any Class Members or other third parties from engaging in unauthorized publicity regarding This Case. To the extent that any unauthorized publicity occurs that is not approved by CBRE or Class Counsel per the above, CBRE and Class Counsel will retain the right to respond, subject to conferring with the other. CBRE, Class Counsel and the Named Plaintiffs further agree to refrain from engaging in any disparaging remarks or comments about each other, and agree that neither CBRE, Class Counsel nor Named Plaintiffs, nor any of their agents, will take any steps to encourage any Class Members or other third parties to engage in disparaging remarks or comments about each other. Moreover, Class Counsel and the Named Plaintiffs will inform any inquiring Class Members not to disparage CBRE and not to discuss this Case with the media or other non-parties to this Case beyond the parameters of the Public Statement.

**23.2.** Class counsel agrees that, within two (2) business days of the Court's granting of preliminary approval of the Consent Decree, they will modify any web site and/or any other publicly-available postings they control that relate to the Litigation as necessary to conform to the parameters of the Public Statement and this Consent Decree.

**23.3.** Notwithstanding the foregoing, Class Counsel retain the right to communicate with Class Members about the terms of this Consent Decree for the purpose of enforcing the terms of the Consent Decree, and CBRE retains the right to communicate with its employees about the terms of this Consent Decree for the purpose of enforcing the terms of the Consent Decree.

## XXIV.   REPRESENTATIONS BY CLASS COUNSEL

**24.1.** Class Counsel warrants and represents that: (1) with the exception of Named Plaintiffs, each does not now represent any individual who may have a claim against CBRE; and

56

(2) each does not now retain any present knowledge of any individual who intends to assert any claim, charge, complaint, action, cause of action, suit, grievance, controversy, dispute or demand against CBRE.

## XXV.    VOLUNTARY DISMISSAL WITH PREJUDICE

25.1.    The Parties agree that the Released Claims shall be dismissed with prejudice upon the Effective Date, provided that the Court retains jurisdiction to enforce the terms of this Consent Decree as described in Section 4.1.

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By:_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL 60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton

_____

Kristine Moran

_____

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank
_____

Olivia Knapp

_____

Agreed to in form:

FOR THE DEFENDANT:

**CB RICHARD ELLIS, INC.**

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

58

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By: _Fegan_ _____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL 60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton

_____

Kristine Moran

_____

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank

_____

Olivia Knapp

_____

Dated:_____

Agreed to in form:

FOR THE DEFENDANT:

**CB RICHARD ELLIS, INC.**

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

Dated:_____

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By:_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL 60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton

_____

Kristine Moran

_____

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank

_____

Olivia Knapp

_____

Dated:_____

Agreed to in form:

FOR THE DEFENDANT:

**CB RICHARD ELLIS, INC**

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

Dated:_____

58

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By:_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL  60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton
_____

Kristine Moran

_____

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank
_____

Olivia Knapp

_____

Agreed to in form:

FOR THE DEFENDANT:

**CB RICHARD ELLIS, INC.**

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By:_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL 60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton

_____

Kristine Moran

_Kristine Moran_

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank

_____

Olivia Knapp

_____

Agreed to in form:

FOR THE DEFENDANT:

**CB RICHARD ELLIS, INC.**

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

58

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By:_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL 60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton

_____

Kristine Moran

_____

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank

_____

Olivia Knapp

_____

Agreed to in form:

FOR THE DEFENDANT:

**CB RICHARD ELLIS, INC.**

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By:_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL 60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton

_____

Kristine Moran

_____

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank
*Norma Plank Fehler (Fehler) as Successor in Interest to Dondi Plank —*

Olivia Knapp

_____

Agreed to in form:

FOR THE DEFENDANT:

**CB RICHARD ELLIS, INC.**

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

Agreed to in form:

FOR THE NAMED PLAINTIFFS &
SETTLEMENT CLASS:

By:_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, IL 60301

By:_____
Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 West Monroe St., Ste. 3300
Chicago, IL 60603

Amy Wiginton

_____

Kristine Moran

_____

Andrea Scott f/k/a Andrea Corey

_____

Norma Plank Fehler as Successor in Interest to
Dondi Plank

_____

Olivia Knapp

_____

Agreed to in form:

FOR THE DEFENDANT:

CB RICHARD ELLIS, INC.

By:_____
Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

58