IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY WIGINTON, KRISTINE MORAN, ANDREA COREY, OLIVIA KNAPP AND NORMA PLANK FETHLER, as successor in interest to DONDI PLANK, individually and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CB RICHARD ELLIS, <br><br> Defendant. | Case No. 02 C 6832 <br><br> Judge Andersen <br><br> Magistrate Judge Ashman |

## DEFENDANT'S STATEMENT OF POSITION CONCERNING TIER 2/3 DISCLOSURES

Comes now Defendant, CB RICHARD ELLIS (hereinafter "CBRE" or the "Company"), and in response to the Court's request at the January 9, 2008 hearing, states:

1. As part of the Parties' Settlement Agreement and Consent Decree, the Parties selected Rust Consulting, Inc. (hereinafter "Rust") as its Claim Administrator. Rust's responsibilities include distributing class notice to the putative class members and receiving and processing Tier Claim Forms as part of the Consent Decree's Monetary Relief provisions.

2. Rust was engaged after the Preliminary Fairness Hearing, and has performed the responsibilities contemplated by the Consent Decree. Rust has sent counsel for the Parties occasional status reports indicating, among other things, the success rate of mailings and the rate of return of responses. This has included a report of the number of each type of Claim Form that Rust has received. Rust has also provided the Parties the names of the individuals submitting Tier 2 and Tier 3 Claim Forms.

3. Plaintiffs have objected to Rust sending the names of Tier 2/3 Claimants, indicating that they should remain anonymous until the Special Master actually presents the parties with the completed Claim Forms. Plaintiffs are wrong.

**CBRE Needs The Names of Tier Claimants As Early As Possible**

4. CBRE needs the names of the Tier 2 and 3 Claimants as soon as possible for two reasons:

    a. **Evidence Preservation** – CBRE needs to safeguard information concerning the Claimants' claims as soon as possible to preserve relevant evidence and to allow CBRE the opportunity to collect information necessary for its defense; and

    b. **Legal Duty to Investigate** – If a Tier 2 or 3 Claimant has a legitimate allegation of currently occurring harassment, CBRE has a legal duty under Title VII to address those issues as promptly as possible, not to wait months until provided the actual Claim Forms by the Special Master. It is certainly in the best interest of CBRE's employees for the company to address any such situations as early as possible.

**There Is No Reason For or Entitlement To Anonymity**

5. CBRE's interest in early identification of alleged harassment victims is not overcome by Plaintiffs' claims that they should remain anonymous for a variety of reasons:

    a. **There is no entitlement to anonymity** – The Consent Decree specifically provides that Tier 1 Claimants are to remain anonymous (see Para. 9.1.6.3). There is not, however, a similar provision anywhere in the Consent Decree with respect to the Tier 2 and Tier 3 Claimants. Plaintiff's argument that the Consent Decree protects the identity of the Tier 2 and 3 Claimants is wrong.

    b. **There is no need for anonymity** – Plaintiffs' counsel insisted on (and CBRE agreed to) strict safeguards against retaliation against any Tier 2 or 3 Claimant for submitting a

2

claim. The Consent Decree itself prohibits retaliation, and the Claim Forms specifically and emphatically state that Claimants need not fear retaliation for participating in the claims process. Thus, Plaintiffs should have no concern about retaliation given the anti-retaliation measures they crafted and included in the Consent Decree.

    c.    **There is no benefit to anonymity** – These very Claimants will eventually be identified by name by the Special Master. After all of the Claims Forms are collected by Rust, they will be sent to the Special Master who will then provide them to CBRE. The anonymity issue is, therefore, moot.

**The Consent Decree Does Not Restrict the Parties' Access to This Information**

    6.    Plaintiffs' argued to this Court at the January 9, 2008 hearing that the Consent Decree prohibits disclosure of the identity of the Tier 2/3 claimants prior to the Claim Form deadline. This is inaccurate. The Consent Decree only addresses the timing of when the Special Master receives the Claim Forms from the administrator and when she then turns them over to CBRE in order for CBRE to prepare its responses. The Consent Decree does not, however, limit the parties' access to basic information about the claims prior to this time. Indeed, the very fact that Rust has provided interim reports at all -- providing a running tally of the number of claims filed in each tier -- evidences that the Parties contemplated ongoing access to information before the forms were fully collected and distributed by the Special Master.

    7.    Ultimately, neither the Plaintiffs nor the Claimants are in any way harmed by providing CBRE the identity of those filing Tier 2 or 3 claims, as those forms are received by Rust. On the other hand, the passage of time could result in lost evidence, prejudicing CBRE. Worse, if the Tier 2 and 3 claimants do indeed have legitimate claims of harassment, Plaintiffs seem to take the untenable position that those conditions should continue for months longer than they would need to had CBRE only had earlier notice of the problems.

3

For all of these reasons, Plaintiffs cannot and should not be allowed to prohibit Rust Consulting from providing CBRE the names of the Tier 2 and 3 Claimants.

>Respectfully submitted,
>
>CB RICHARD ELLIS
>
>By: /s/ Brenda H. Feis
>    One of Its Attorneys

Brenda H. Feis
Christopher J. DeGroff
Anne E. Duprey
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000 telephone
(312) 460-7000 facsimile

January 11, 2008